UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro VELASCO–MEDINA,
Defendant–Appellant.

No. 01–50064.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2002.

Filed Aug. 12, 2002.

842

Gary P. Burcham, San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, Kyle W. Hoffman, Asst. United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before: PREGERSON, TROTT, Circuit Judges, and FITZGERALD,* District Judge.

## OPINION

TROTT, Circuit Judge.

Pedro Velasco–Medina ("Velasco–Medina") appeals his jury conviction and sentence for attempted reentry after deportation, in violation of 8 U.S.C. § 1326, and his sentence for falsely representing himself as a United States citizen, in violation of 18 U.S.C. § 911. Velasco–Medina offers two grounds for overturning his conviction for attempted reentry: (1) his indictment was defective because it failed to allege specific intent, and (2) the underlying deportation proceeding violated his due process rights under the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Velasco–Medina argues also that we must vacate his forty-six month sentence for attempted reentry because his second degree burglary conviction preceding his deportation was not an aggravated felony under California law and, therefore, the district court erred in imposing a sixteen-level sentencing enhancement based on this earlier conviction. Finally, Velasco–

---

* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

Medina argues that the district court erred in denying him a three-level downward adjustment at sentencing for acceptance of responsibility. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm in all respects.

## BACKGROUND

Velasco–Medina is a Mexican citizen who was admitted to the United States as a lawful permanent resident in 1967. He lived most of his life in Southern California. His mother, ex-wife, and daughter—all United States citizens—continue to live in this country. Between 1981 and 1996, Velasco–Medina was convicted of at least nine crimes involving drug and alcohol-related offenses, spousal abuse, and grand theft. These years were also checkered with numerous arrests for drug use and assault.

In June 1996, Velasco–Medina pleaded guilty to second degree burglary, petty theft with a prior, and being under the influence of a controlled substance. For these offenses, Velasco–Medina received a one year prison sentence and three years of probation.[1] Under the laws then in effect, an alien was deportable upon conviction for any "aggravated felony." *See* 8 U.S.C. § 1251(a)(2)(A)(iii) (1995) (redesignated as 8 U.S.C. § 1227(a)(2)(A)(iii)). At that time, a burglary conviction qualified as an "aggravated felony" if the imposed prison term was at least five years. *See* 8 U.S.C. § 1101(a)(43)(G) (1995). Because Velasco–Medina received only a one-year sentence, his June 1996 burglary conviction did not qualify as an "aggravated felony" and did not make him deportable.

Velasco–Medina's burglary conviction was sandwiched between the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546. Section 440(d) of AEDPA, which took effect on April 24, 1996, rendered aliens convicted of aggravated felonies, regardless of the length of their sentence, ineligible for discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act ("INA").[2] *See* 110 Stat. 1277 (amending 8 U.S.C. § 1182(c) (repealed 1996)). AEDPA's changes, however, did not affect Velasco–Medina because his June 1996 burglary conviction was not deemed an "aggravated felony" for deportation purposes under the then-current law.

Section 304 of IIRIRA, which went into effect on April 1, 1997, repealed INA § 212(c), 8 U.S.C. § 1182(c), replacing it with a procedure called "cancellation of removal." *See* 110 Stat. 3309–597, codified at 8 U.S.C. § 1229b. Consistent with AEDPA, IIRIRA § 304 provided that lawful permanent residents who had been convicted of an aggravated felony were ineligible for cancellation of removal (formerly § 212(c) relief). See 110 Stat. 3309–594, codified at 8 U.S.C. § 1229b(a). Of particular relevance to Velasco–Medina's appeal, § 321 of IIRIRA expanded the definition of "aggravated felony" by reducing the prison sentence required to trigger "aggravated felony" status for burglary from five years to one year. *See* 8 U.S.C.

---

1. Velasco–Medina later violated his probation and received a three-year sentence for the burglary conviction.

2. Prior to its repeal by IIRIRA, section 212(c) gave the Attorney General discretion to grant relief from deportation to a lawful permanent

alien who had resided in the United States for at least seven consecutive years and who had not served five or more years in prison for one or more aggravated felony convictions. See 8 U.S.C. § 1182(c) (1995).

§ 1101(a)(43)(G) (1996). The changes wrought by IIRIRA recharacterized Velasco–Medina's burglary conviction as an aggravated felony and made him eligible for removal, without the possibility of cancellation of removal.

On January 26, 2000, the INS commenced deportation proceedings against Velasco–Medina. On March 6, 2000, the INS served him with a notice to appear, which asserted that he was deportable because he had been convicted of an aggravated felony. *See* 8 U.S.C. §§ 1101(a)(43), 1227(a)(2)(A)(iii). At Velasco–Medina's initial hearing, he accepted the Immigration Judge's ("IJ") recommendation to continue the proceedings in order to consult with an attorney. At the subsequent hearing, the IJ determined that Velasco–Medina's burglary conviction constituted an aggravated felony and that Velasco–Medina was not eligible for any waiver or relief from deportation. Consequently, the IJ issued an order removing Velasco–Medina to Mexico and advised Velasco–Medina of his right to appeal the removal order. Velasco–Medina waived his appeal, and was removed that same day.

On June 10, 2000, Velasco–Medina attempted to reenter the United States from Mexico through the Otay Mesa, California, Port of Entry as a passenger in another's car. During the primary inspection, Velasco–Medina told the immigration inspector that he was a United States citizen by virtue of his birth in Los Angeles, California. The inspector suspected that Velasco–Medina was lying and referred him to a secondary check point, where an immigrant background check revealed Velasco–Medina's true immigration history. Confronted with the truth, Velasco–Medina admitted that he was a Mexican citizen, that he had been deported only days earlier, and that he had not received permission to reenter the country.

In August 2000, a grand jury returned a two-count indictment against Velasco–Medina, charging him with attempted reentry after deportation, in violation of 8 U.S.C. § 1326 (Count One), and making a false claim to United States citizenship, in violation of 18 U.S.C. § 911 (Count Two). Velasco–Medina filed a motion *in limine* to dismiss the indictment because the retroactive application of AEDPA and IIRIRA in his earlier deportation hearing impermissibly denied him the opportunity for discretionary relief from deportation under § 212(c). Finding no due process violation in the underlying deportation procedures, the district court denied his motion. At no time before or after trial did Velasco–Medina move to dismiss Count One of the indictment for failure to allege specific intent to enter the United States after deportation. After a two day trial, the jury convicted him on both counts.

At sentencing, the district court determined that Velasco–Medina's 1996 second degree burglary conviction constituted an aggravated felony and consequently enhanced his offense level sixteen levels. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2(b)(1)(A) (2000).[3] The district court denied Velasco–Medina's request for a downward adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility. After departing five levels to account for the comparatively minor nature of Velasco–Medina's aggravated felony, the district court sentenced him to forty-six months in custody and three years of supervised release for Count One, and to thirty months in custody and one year of

---

**3.** All references in this opinion to the Sentencing Guidelines are to the November 1, 2000 version—the version in effect at the time of Velasco–Medina's sentencing. *See* U.S.S.G. § 1B1.11(a); *United States v. Steffen,* 251 F.3d 1273, 1277 (9th Cir.2001).

supervised release for Count Two, to run concurrently.

Velasco–Medina timely appeals his conviction for attempted reentry, the imposition of the sixteen-level enhancement, and the denial of a downward adjustment for acceptance of responsibility.

## DISCUSSION

### I Jurisdiction Over Count One of the Indictment (8 U.S.C. § 1326)

■ In *United States v. Gracidas–Ulibarry*, 231 F.3d 1188 (9th Cir.2000) (en banc), we held that "the crime of attempted illegal reentry into the United States includes the common law element of specific intent." *Gracidas–Ulibarry*, 231 F.3d at 1190. ("Specific intent" denotes the purpose or conscious desire to cause the particular offense. *Id.* at 1196.) Thus, a conviction for attempted illegal reentry under 8 U.S.C. § 1326 requires proof that "the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General." *Id.; see also United States v. Pernillo–Fuentes*, 252 F.3d 1030, 1032 (9th Cir.2001) (reversing conviction for attempted reentry after deportation because the indictment failed to allege specific intent as required by *Gracidas–Ulibarry*).

Count One of the indictment failed to charge Velasco–Medina with specific intent to attempt to reenter the United States after deportation.[4] The parties agree that the government's failure to allege specific intent rendered the indictment defective under *Pernillo–Fuentes*. The government asserts, however, that Velasco–Medina

waived his objection to the indictment's sufficiency by failing to raise it before the district court. Velasco–Medina responds that the indictment's defect deprived the district court of jurisdiction over the case *ab initio*, and thus requires that we overturn his conviction. We find neither argument availing.

■ The government's position that Velasco–Medina waived any objection to the indictment's sufficiency by failing to raise it in the district court has been repeatedly rejected in this Circuit. *See, e.g., United States v. Godinez–Rabadan*, 289 F.3d 630, 632 (9th Cir.2002) (holding that indictment's sufficiency is jurisdictional in nature and may be raised initially on appeal); *United States v. Geiger*, 263 F.3d 1034, 1039 (9th Cir.2001) (same); *United States v. Ruelas*, 106 F.3d 1416, 1418 (9th Cir. 1996) ("Ruelas may raise a defective indictment claim at any time."); *see also* Fed. R.Crim.P. 12(b)(2) (2002) (providing that objections that an indictment "fails ... to charge an offense ... shall be noticed by the court at any time during the pendency of the proceedings"). We reject it again here.

■ Velasco–Medina's position fares no better. He argues that the indictment's failure to allege the specific intent required for attempted reentry deprived the district court of jurisdiction because the indictment failed to charge him with an offense against the United States. Velasco–Medina's argument is untenable in light of the Supreme Court's recent decision in *United States v. Cotton*, 535 U.S. ——, 122

---

4. Count One of Velasco–Medina's indictment charges:

> On or about June 10, 2000, within the Southern District of California, defendant PEDRO VELASCO–MEDINA, an alien, who previously had been excluded, deported and removed from the United States to Mexico,

attempted to enter the United States at the Otay Mesa Port of Entry, without the Attorney General of the United States having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

S.Ct. 1781, 152 L.Ed.2d 860 (2002): "[D]efects in an indictment do not deprive a court of its power to adjudicate a case." *Cotton*, 122 S.Ct. at 1785; *see also id.* ("Justice Holmes explained that a district court 'has jurisdiction of all crimes cognizable under the authority of the United States ... [and] the objection that the indictment does not charge a crime against the Untied States goes only to the merits of the case.'") (quoting *Lamar v. United States*, 240 U.S. 60, 65, 36 S.Ct. 255, 60 L.Ed. 526 (1916) (alteration in original)). Having disposed of these initial issues, we turn to the merits of Velasco–Medina's appeal.

## II Sufficiency of the Indictment

### A. Standard of Review

■ Relying on *Pernillo–Fuentes* and *United States v. Du Bo*, 186 F.3d 1177 (9th Cir.1999), Velasco–Medina asserts that our review is de novo and that the indictment's defect warrants automatic reversal of his conviction. We disagree. In *Pernillo–Fuentes*, the grand jury returned an indictment charging the defendant with attempted reentry after deportation. 252 F.3d at 1031–32. Pernillo–Fuentes timely objected to the indictment because it, like the one charging Velasco–Medina, failed to allege specific intent. The district court denied Pernillo–Fuentes's objection and, pursuant to a guilty plea, convicted him of attempted reentry after deportation. We reversed "[b]ecause Pernillo–Fuentes' indictment charging attempted entry did not allege specific intent as required under *Gracidas–Ulibarry*." *Id.* at 1032. Velasco–Medina urges the same result here.

Unlike Pernillo–Fuentes, Velasco–Medina did not object at trial to the indictment's sufficiency—a critical distinction. We relied on this distinction in *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), where the defendant argued after the verdict "that the indictment was defective because it failed to allege the jurisdictional fact that he was an Indian." *James*, 980 F.2d at 1316. We noted that "[w]hen the sufficiency of the indictment is challenged after trial, it is only required that 'the necessary facts appear in any form or by fair construction can be found within the terms of the indictment.'" *Id.* at 1317 (quoting *Kaneshiro v. United States*, 445 F.2d 1266, 1269 (1971)). Thus, we upheld the indictment because "the necessary elements of the crime appear[ed] in the indictment *by reference to the relevant statutes*," thereby adequately informing James of the elements of the charge against him. *Id.* at 1318 (emphasis added).

Our decision in *Du Bo* does not compel a different result. In *Du Bo*, defendant was charged by indictment for violating the Hobbs Act. 186 F.3d at 1179. Months before trial, Du Bo unsuccessfully challenged the sufficiency of the indictment for failing to specify the necessary mens rea. *Id.* Reversing, we noted: "[I]f properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Id.* We emphasized, however, that "[o]ur holding is limited to cases where a defendant's challenge is timely .... Untimely challenges to the sufficiency of an indictment are reviewed under a more liberal standard." *Id.* at 1180 n. 3.

■ That review is for plain error. *See United States v. Ross*, 206 F.3d 896, 899 (9th Cir.2000); Fed.R.Crim.P. 52(b). Because Velasco–Medina challenges the sufficiency of Count One of the indictment for the first time on appeal, "we liberally construe the indictment in favor of validity." *United States v. Chesney*, 10 F.3d 641, 643 (9th Cir.1993). Our liberal review requires

only that "the necessary facts appear in any form or by fair construction can be found within the terms of the indictment." *James,* 980 F.2d at 1317.

## B. Analysis

■ Reviewing for plain error, we find none. "The key question [as to whether an indictment is adequate] is whether an error or omission in an indictment worked to the prejudice of the accused..... Absent such prejudice, the conviction may not be reversed for any omission in the indictment." *Id.* at 1316–17 (internal quotations omitted) (alteration in original). At oral argument, Velasco–Medina's attorney conceded that his client's trial counsel was aware of the nature of the alleged offense and knew that the government needed to prove specific intent even though. that element was missing from the indictment. Moreover, Velasco–Medina's indictment specifically referred to 8 U.S.C. § 1326, which prescribes the penalty for "any alien who (1) has been ... deported ... and thereafter (2) ... attempts to enter ... the United States." 8 U.S.C. § 1326(a). Reference to this statute put Velasco–Medina on notice of the charge against him and the specific intent necessary to support a conviction.

In addition, the district judge's instructions to the jury eliminated any risk of prejudice. The judge directed the jury to convict Velasco–Medina under 8 U.S.C. § 1326 only if it found beyond a reasonable doubt that he "voluntarily attempted to reenter the United States without the consent of the [INS]," and he "intended to reenter the United States after his deportation." These instructions conveyed the essence of specific intent and assured that the jury would not convict without finding it existed. Thus, any defect in the indict-

ment was harmless and provides no basis for reversing Velasco–Medina's conviction.

## III Collateral Attack of the Underlying Deportation Order

Velasco–Medina argues that his conviction for attempted reentry after deportation must be overturned because of procedural defects in his underlying deportation hearing. Specifically, Velasco–Medina contends that the IJ failed to inform him of his right to seek a waiver from deportation. This failure, according to Velasco–Medina, resulted from the IJ's impermissible retroactive application of IIRIRA. The district court found no grounds for overturning Velasco–Medina's underlying deportation. Neither do we.

### A. Standard of Review

■ When a motion to dismiss an indictment under 8 U.S.C. § 1326 is based on alleged due process defects in the underlying deportation proceeding, we review the denial of that motion de novo. *United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.2001).

### B. Analysis

■ "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate–Martinez,* 133 F.3d 1194, 1197 (9th Cir.1998) (citing *United States v. Mendoza–Lopez,* 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)). Where direct judicial review of the deportation order was unavailable, the deportation's validity may be collaterally attacked in the subsequent criminal proceeding. *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000). To succeed in his collateral attack, Velasco–Medina must demonstrate that "(1) his due process rights were vio-

lated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* (quoting *Zarate–Martinez*, 133 F.3d at 1197); *see also* 8 U.S.C. § 1326(d).

The government argues that Velasco–Medina waived his right to collaterally attack his deportation by waiving his appeal of the IJ's deportation order. *See Arrieta*, 224 F.3d at 1079 ("[A]n alien cannot collaterally attack an underlying deportation order if he validly waived his right to appeal that order."); 8 U.S.C. § 1326(d) ("[A]n alien may not challenge the validity of the deportation order ... unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order."). Velasco–Medina responds that the government waived this argument by failing to raise it in the district court, *see United States v. Perez–Corona*, 295 F.3d 996, 1000 (9th Cir.2002), and, alternatively, that his waiver was invalid because it was neither considered nor intelligent. *See Muro–Inclan*, 249 F.3d at 1182. We need not resolve the waiver question, because even assuming Velasco–Medina did not waive his right to collaterally attack his deportation, we find no due process violation to support his claim.

█ Velasco–Medina contends that the IJ's failure to inform him of his eligibility for § 212(c) relief reflects the same retroactive application of IIRIRA held impermissible by the Supreme Court in *St. Cyr*.[5] We agree that *St. Cyr* guides our analysis but find that it supports the government's, not Velasco–Medina's, position.

Enrico St. Cyr pleaded guilty to a state law drug offense ten years after his admission to the United States as a lawful permanent resident. Though his guilty plea rendered him deportable, St. Cyr was eligible for § 212(c) relief under then—current, pre-IIRIRA law. Removal proceedings were commenced shortly after IIRIRA's effective date. At his removal hearing, St. Cyr sought to avoid removal by applying for a waiver under § 212(c). After the IJ denied St. Cyr's § 212(c) application, St. Cyr appealed to the Board of Immigration Appeals. Believing that IIRIRA § 304 deprived St. Cyr of possible relief under § 212(c), the BIA dismissed the appeal. *St. Cyr v. INS*, 229 F.3d 406, 408–09 (2d Cir.2000).

St. Cyr filed a habeas petition in district court alleging that AEDPA and IIRIRA did "not apply to removal proceedings brought against an alien who pled guilty to a deportable crime before their enactment." *St. Cyr*, 533 U.S. at 293, 121 S.Ct. 2271. The district court and Second Circuit agreed, and the Supreme Court affirmed: " § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326, 121 S.Ct. 2271. In reaching this conclusion, the Court relied on *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), which provides a two-step analysis for determining whether a statute is impermissibly retroactive. Under *Landgraf*, "the first step in determining whether a statute has an im-

---

5. On appeal, Velasco–Medina does not identify the particular INA section under which he was entitled to discretionary relief. Because he argued before the district court that he was eligible for 212(c), we presume that forms the basis for his argument here. To the

extent Velasco–Medina rest his argument on different grounds, he waived it by failing to raise it before the district court. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir.2002).

permissible retroactive effect is to ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively." *St. Cyr*, 533 U.S. at 316, 121 S.Ct. 2271. The Court rejected the INS's argument that Congress "ha[d] affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* at 320, 121 S.Ct. 2271.

Proceeding to the second step of the *Landgraf* retroactivity analysis, the Court considered whether depriving St. Cyr of § 212(c) relief had an impermissible retroactive effect. "A statute has retroactive effect when it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" *Id.* at 321, 121 S.Ct. 2271 (quoting *Landgraf*, 511 U.S. at 269, 114 S.Ct. 1483). The Court held that IIRIRA's elimination of § 212(c) relief did just that.

When St. Cyr entered the plea agreement for his conviction, he was "acutely aware of the immigration consequences of [his] conviction[ ]." *Id.* at 322, 121 S.Ct. 2271. His guilty plea rendered him deportable, so "preserving the possibility of [§ 212(c) ] relief would have been one of the principal benefits [he] sought." *Id.* at 323, 121 S.Ct. 2271. By entering into a plea arrangement with the government, St. Cyr. waived his constitutional right to trial and "grant[ed] the government numerous 'tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.'" *Id.* at 322, 121 S.Ct. 2271 (quoting *Newton v. Rumery*, 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987)). In return, he relied on the availability of future § 212(c) relief, which, given the frequency that such

relief was granted at the time, was a significant bargaining chip. *Id.* at 322–23, 121 S.Ct. 2271. Applying IIRIRA's repeal of discretionary relief to St. Cyr would upset these expectations and work an "obvious and severe retroactive effect." *Id.* at 325, 121 S.Ct. 2271. Accordingly, the Court determined that § 212(c) relief could not be denied to St. Cyr who, in spite of his plea agreement, "*would have been eligible for § 212(c) relief at the time of the[ ] plea under the law then in effect.*" *Id.* at 326, 121 S.Ct. 2271 (emphasis added).

 The considerations that supported maintaining § 212(c) relief for St. Cyr are absent for Velasco–Medina. At the time of his guilty plea, St. Cyr's aggravated felony conviction rendered him deportable but qualified him for § 212(c) relief; he enjoyed "vested rights acquired under existing laws." *Id.* at 321, 121 S.Ct. 2271. By contrast, Velasco–Medina was never eligible for discretionary relief under § 212(c) because his guilty plea did not render him deportable; unlike St. Cyr, he never possessed "vested rights acquired under existing laws." Thus, Velasco–Medina could not have developed the sort of settled expectations concerning § 212(c) relief that informed St. Cyr's plea bargain and that animated the *St. Cyr* decision.

Moreover, it is noteworthy that at the time of Velasco–Medina's guilty plea, AEDPA had foreclosed § 212(c) relief for legal permanent residents convicted of aggravated felonies. Velasco–Medina's settled expectations must have been shaped by the then-current legal landscape. *See id.* at 322, 121 S.Ct. 2271 ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.") (citing *Magana–Pizano v. INS*, 200 F.3d 603, 612 (9th Cir.1999) ("That an alien charged with a crime ... would fac-

tor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented.")). Velasco–Medina would have realized that if his conviction were recharacterized as an aggravated felony (as, in fact, it was by IIRIRA), he would have, under AEDPA, been ineligible for discretionary relief under § 212(c).

The Supreme Court has counseled that "whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 321, 121 S.Ct. 2271 (internal quotations omitted). Here, AEDPA provided Velasco–Medina with fair notice that discretionary relief under § 212(c) would be unavailable in the event his conviction was reclassified as an aggravated felony. To the extent he anticipated the continued availability of § 212(c) relief after his guilty plea, his expectations were neither reasonable nor settled under *St. Cyr.* We, therefore, hold that IIRIRA's repeal of § 212(c) relief is not impermissibly retroactive as applied to Velasco–Medina under *Landgraf* and *St. Cyr.* Accordingly, Velasco–Medina's deportation was valid because he was ineligible for § 212(c) relief. Hence, his collateral attack fails.

## IV Sixteen–Level Sentencing Enhancement

Velasco–Medina contends that his 1996 conviction for second degree burglary does not constitute an aggravated felony and the district court therefore erred in imposing a sixteen-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A). We disagree.

### A. Standard of Review

"We review de novo whether the aggravated felony provisions of the Sentencing Guidelines apply to the conviction."

*United States v. Rivera–Sanchez,* 247 F.3d 905, 907 (9th Cir.2001) (en banc).

### B. Analysis

Under the Sentencing Guidelines, a district court must impose a sixteen-level sentencing enhancement if the defendant was previously deported after a criminal conviction and "the conviction was for an aggravated felony." U.S.S.G. § 2L1.2(b)(1)(A). For purposes of § 2L1.2(b)(1)(A), " 'aggravated felony' is defined at 8 U.S.C. § 1101(a)(43) without regard to the date of conviction." U.S.S.G. § 2L1.2(b)(1)(A), cmt. n. 1. Under 8 U.S.C. § 1101(a)(43)(G), an "aggravated felony" includes a "burglary offense for which the term of imprisonment [is] at least one year." Velasco–Medina argues that his conviction for second degree burglary under California Penal Code § 459 does not constitute a "burglary" under 8 U.S.C. § 1101(a)(43)(G), and thus does not qualify as an aggravated felony for purposes of the sixteen-level sentencing enhancement.

"[T]he term 'burglary,' as used in 8 U.S.C. § 1101(a)(43)(G), has a uniform definition independent of the labels used by state codes . . .—the unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Ye v. INS,* 214 F.3d 1128, 1132 (9th Cir.2000) (adopting definition of burglary from *Taylor v. United States,* 495 U.S. 575, 598–99, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). In assessing whether a person's conviction satisfies this generic definition, we do not examine the particulars of the burglary committed. *Rivera–Sanchez,* 247 F.3d at 907. Rather, we " 'look only to the fact of conviction and the statutory definition of the prior offense.' " *Id.* at 907–08 (quoting *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143). In cases where the state statute accords with the *Taylor/Ye* generic definition of burglary,

the mere fact of conviction under that statute justifies treating the burglary as an aggravated felony and imposing a sentencing enhancement. *See Taylor,* 495 U.S. at 599, 110 S.Ct. 2143.

Where, however, the state statute reaches both conduct that would constitute a burglary under *Taylor/Ye* and conduct that would not, we may look beyond the statutory language to "documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purpose"—i.e., that the jury actually found all the elements of burglary under *Taylor/Ye. United States v. Casarez–Bravo,* 181 F.3d 1074, 1077 (9th Cir.1999) (internal quotations omitted); *see also Taylor,* 495 U.S. at 602, 110 S.Ct. 2143 (permitting a court to consider whether "the charging paper or jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant"); *Ye,* 214 F.3d at 1132 (same). "[I]f the statute and the judicially noticeable facts would allow the defendant to be convicted of an offense other than that defined as a qualifying offense by the guidelines, then the conviction does not qualify as a predicate offense." *Rivera–Sanchez,* 247 F.3d at 908.

### 1. The Fact of Conviction and the Statutory Language

To determine whether Velasco–Medina's conviction for second degree burglary constitutes a "burglary" (and thus an aggravated felony) as used in 8 U.S.C. § 1101(a)(43)(G), we look first to California Penal Code § 459, the statute under which he was convicted.[6] Section 459 provides in part: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, ... or other building ...

with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal.Penal Code § 459 (Deering 1996). This Court has "previously and unequivocally held that California Penal Code section 459 is far too sweeping to satisfy the *Taylor* definition of generic burglary." *United States v. Franklin,* 235 F.3d 1165, 1169 (9th Cir.2000). Thus, we consider whether other documentation clearly establishes that Velasco–Medina's underlying burglary conviction involved the requisite elements of generic burglary.

### 2. The Charging Papers and the Abstract of Judgment

Sentencing courts may consider a variety of documents or combinations of documents in determining whether a defendant has pleaded guilty to a burglary that triggers a sentencing enhancement. *See Franklin,* 235 F.3d at 1170 n. 5 (listing as examples: charging papers and judgment of conviction; charging papers and signed plea agreement; transcript of plea proceeding alone; judgment of guilty plea that refers to elements of burglary in charging papers). Two considerations guide the sentencing court's analysis: avoiding an inquiry into the underlying facts of the defendant's prior conviction, and relying on documentation that clearly establishes a conviction based on all of the generic elements of the underlying offense. *Id.* at 1170; *Bonat,* 106 F.3d at 1476.

■ Relying on the language in the charging papers (i.e., the Information) along with the abstract of judgment reflecting Velasco–Medina's guilty plea, the district court determined that his burglary conviction satisfied *Taylor's* definition.

---

6. Though *Taylor* addressed the sufficiency of convictions resulting from a jury conviction, it is well-accepted that the same analysis applies when the defendant has pleaded guilty. *United States v. Bonat,* 106 F.3d 1472, 1476 (9th Cir.1997).

Count One of the June 17, 1996 Information stated as follows:

> On or about May 16, 1996, in the County of Los Angeles, the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by PEDRO VELASCO AND FRANK MARCIAS PEREGRINA, who did willfully and unlawfully enter a commercial building occupied by SAVON DRUG STORE with the intent to commit larceny and any felony.

Velasco–Medina pleaded guilty to this count on June 19, 1996.

It cannot be disputed that Count One's language sets out the generic elements of burglary. Indeed, we have considered several cases in which defendants pleaded guilty or *nolo contendere* to charging papers materially indistinguishable from those used to charge Velasco–Medina, and in each case we held that their convictions fit *Taylor's* generic definition. *See, e.g.,* *United States v. Williams,* 47 F.3d 993, 995 (9th Cir.1995); *United States v. Dunn,* 946 F.2d 615, 620 (9th Cir.1991); *United States v. O'Neal,* 937 F.2d 1369, 1373–74 (9th Cir.1991), *overruled on other grounds by United States v. Sahakian,* 965 F.2d 740 (9th Cir.1992). *See also Franklin,* 235 F.3d at 1170 (noting that document charging that Franklin "did willfully and unlawfully enter ... with the intent to commit larceny" satisfied *Taylor*). *Cf. United States v. Parker,* 5 F.3d 1322, 1325 (9th Cir.1993) (holding that Information charging burglary did not satisfy *Taylor* because of failure to allege "unlawful or unprivileged" entry).

The Information alone, however, cannot support a finding that Velasco–Medina's burglary conviction was an aggravated felony. *See Bonat,* 106 F.3d at 1477 ("If the district court relied solely on the charging instrument, this was error."). By itself, the Information contained the elements of the crime the government *set out to prove*; it did not establish the elements to which Velasco–Medina actually admitted in his guilty plea. For this reason, the government is required to "prove that the defendant by plea admitted to all of the elements of generic burglary." *Franklin,* 235 F.3d at 1172. The record before us contains only the Abstract of Judgment, not the judgment itself or the guilty plea. Thus, we must determine whether the Abstract of Judgment, when coupled with the Information, furnishes sufficient proof that Velasco–Medina was convicted of all the elements of generic burglary.

The Abstract of Judgment reflects that Velasco–Medina pleaded guilty to Count One of the Information. As noted, Count One of the Information contained all of the elements for generic burglary. By pleading guilty to Count One, Velasco–Medina admitted the facts alleged therein. *See United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1988) (a plea of guilty is an admission that the defendant "committed the crime charged against him") (internal quotation omitted) (emphasis added); *United States v. Harris,* 108 F.3d 1107, 1109 (9th Cir.1997) ("[A] guilty plea conclusively proves the factual allegations contained in the indictment.") (citing *United States v. Mathews,* 833 F.2d 161, 164 (9th Cir.1987)).

We considered a similar situation in *Bonat.* There, we upheld the district court's reliance on charging papers and the Judgment on Plea of Guilty to determine that the defendant's prior Oklahoma conviction constituted a generic burglary. In doing so, we observed:

> Even if we agreed with Bonat that the district court only relied on the charging document, we would affirm because the Judgment on Plea of Guilty shows that Bonat did in fact plead guilty to second

degree burglary as charged in the Information, and the Information included all the elements of generic burglary. *Bonat,* 106 F.3d at 1477–78. Similarly, Velasco–Medina's Abstract of Judgment demonstrates that he pleaded guilty to second degree burglary as charged in his Information. Because the Information charged all of the elements of generic burglary, the district court properly imposed a sixteen-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A) for deportation following an aggravated felony.

## V Sentencing Adjustment for Acceptance of Responsibility

Velasco–Medina's final contention on appeal is that the district court erred by denying him a three-level downward adjustment under U.S.S.G. § 3E1.1 for acceptance of responsibility. We disagree.

### A. Standard of Review

 "A district court's decision about whether a defendant has accepted responsibility is a factual determination reviewed for clear error." *United States v. Bazuaye,* 240 F.3d 861, 863 (9th Cir.), *cert. denied,* 533 U.S. 959, 121 S.Ct. 2613, 150 L.Ed.2d 768 (2001); *see also* U.S.S.G. § 3E1.1, cmt. n. 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

### B. Analysis

 U.S.S.G. § 3E1.1 provides:

(a) If the Defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense by 2 levels.

(b) If the Defendant qualifies for a decrease under (a), the offense level determined prior to the operation of

(a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by . . . :

(1) timely providing complete information to the Government concerning his own involvement in the offense,

(2) . . . .

decrease the offense by 1 additional level.

Velasco–Medina argues that he fully accepted responsibility for his crimes on two separate occasions: (1) immediately after his arrest, when he admitted to the immigration inspector that he was a Mexican citizen and lacked permission to enter the United States; and (2) during cross-examination, when he admitted lying to the immigration inspector at the port of entry by initially claiming to have been born in Los Angeles.

The district court refused to grant the downward adjustment, reasoning that:

But the point is for acceptance . . . Mr. Velasco clearly did not take the stand and say, Yes, I am a citizen of Mexico. Yes, I have no lawful right to be here. Yes, I made a false claim to U.S. citizenship at the time I entered. I mean, that, we all agree, did not happen.

And he did testify . . . . [H]e was trying to get the jury to believe that . . . the Government had not proved that by hook or by crook or some other means he was somehow or another a U.S. citizen. I mean, it was kind of a dancing on a fine line between jury nullification and U.S. Citizen, right?

The district court continued:

[W]hen you've got a defendant saying he was born in Los Angeles at the time of his arrest, and making statements that he said during trial, how do I find acceptance? I mean, he really challenged it

right on front, which is his right. But if he does and testifies and also says at the time he's arrested he's a U.S. citizen, where do I find acceptance in this picture?

At trial, Velasco evaded responsibility for his offenses, and only admitted that he was a Mexican citizen after repeated questions by the government. Putting the government to its burden is, of course, any defendant's right, and does not *ipso facto* render him ineligible for an acceptance of responsibility adjustment. *United States v. Ochoa–Gaytan*, 265 F.3d 837, 840 (9th Cir.2001); U.S.S.G. § 3E1.1, cmt. n. 2. The district court recognized that it was not foreclosed from recognizing Velasco–Medina's acceptance of responsibility merely because he put on a vigorous defense. Having the benefit of presiding over the trial and watching Velasco–Medina testify, however, the court determined that no downward adjustment was warranted. Because nothing in the record suggests this determination was clearly erroneous, we do not disturb Velasco–Medina's sentence.

## CONCLUSION

The government's failure to allege in Count One of its indictment the specific intent to attempt to reenter rendered the indictment defective, but did not deprive this or the district court of jurisdiction over the action. Because Velasco–Medina failed to object to this error at trial, we review the sufficiency of the indictment for plain error. Though the defect was error, it did not prejudice Velasco–Medina and thus provides no basis for overturning his conviction. Velasco–Medina's collateral attack on his deportation fails because he was not eligible for discretionary relief from deportation as an aggravated felon. Accordingly, we affirm his conviction under 8 U.S.C. § 1326.

In addition, we find that the charging papers and Abstract of Judgment for Velasco–Medina's second degree burglary conviction demonstrate that he pleaded guilty to all of the elements constituting a generic burglary under *Taylor*. Therefore, the burglary conviction qualified as an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(A) and warranted a sixteen-level sentencing enhancement. Finally, the district court did not clearly err in finding that Velasco–Medina had not accepted responsibility for his crime.

**AFFIRMED.**