8 C.F.R. § 1003.18(b). The Supreme Court in Pereira heard and rejected the argument that this provision relaxes the time and date requirement of § 1229(a). This Court does too.
This regulation is in clear contrast with the requirement of 8 U.S.C. § 1229(a)(1)(g). An agency cannot, through the passage of a regulation, change a statute. The power of executing the laws provides agencies the authority to resolve questions left open that arise during the law's administration, but "it does not include a power to revise clear statutory terms that turn out not to work in practice." Util. Air Regulatory Grp. v. E.P.A. , 573 U.S. 302, 327, 134 S.Ct. 2427, 2446, 189 L.Ed.2d 372 (2014). "If there is any conflict between the statute and the regulation, the former prevails." Duke v. United States , 255 F.2d 721, 724 (9th Cir. 1958).
The inconsistency between this statutory provision is partially explained by the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIIRA), 110 Stat. 3009-546. The Department of Justice issued a Proposed Rule, in 1997, which sought to implement the provisions of IIRIRA. 62 FR 443-517 (1997). That rule expressly stated, in a section titled "The Notice to Appear (Form I-862)", that "[t]he charging document which commences removal proceedings under section 240 of the Act will be referred to as the Notice to Appear, Form I-862," describing a number of the new requirements of a Notice to Appear Id. , at 449. That section continued to state:
In addition, the proposed rule implements the language of the amended Act indicating that the time and place of the hearing must be on the Notice to Appear. The Department will attempt to implement this requirement as fully as possible by April 1, 1997. Language has been used in this part of the proposed *1136 rule recognizing that such automated scheduling will not be possible in every situation (e.g., power outages, computer crashes / downtime.)
Id. 8 C.F.R. § 1003.18 was contained within that proposed rule as implemented, with the "where practicable" provisio. Id. at 457. Thus, 8 C.F.R. § 1003.18 is best interpreted as requiring time and date information, absent an exceptional circumstance where an external factor rendered the computerized dynamic scheduling system in use at the time inoperable. Not only is it clear that the Notice to Appear contemplated within the regulations is the same Notice to Appear defined in 8 U.S.C. § 1229(a), the regulations that the Government relies upon to relieve itself of the time and place requirements were an attempt to incorporate them into practice.
(C) The Notice of Hearing Did Not Cure the Notice to Appear
The Government argues in the alternative that the immigration court was vested with jurisdiction when the Notice of Hearing was sent by the immigration court to Mr. Bastide-Hernandez. However, the immigration court's service of a notice of hearing fails to comport with many requirements of 8 C.F.R. § 1003.14(a). The Notice of Hearing is descriptively not capable of vesting jurisdiction under the regulation. First, a notice of hearing is not a "charging document." See 8 C.F.R. § 1003.13. Second, the regulation refers to charging documents "filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The term "filed" is defined elsewhere as "the actual receipt of a document by the appropriate Immigration Court." 8 C.F.R. § 1003.13. The Notice of Hearing was not filed with the immigration court by the service, it was sent by the immigration court. ECF No. 26-4.
Finally, the method by which the Notice of Hearing was served was inconsistent with both the statutory requirements for service for a Notice to Appear, and the regulatory requirements. 8 U.S.C. § 1229(a)(1) requires the notice to be given in person or by mail upon either the noncitizen or the noncitizen's counsel of record, and the regulation which vests jurisdiction specifically requires a certificate of service showing service pursuant to a separate regulation which echoes that requirement. 8 C.F.R. § 1003.14(a). The cross-referenced regulation requires service either "in person or by first class mail to the most recent address contained in the Record of Proceeding," stating "[a]ny documents or applications not containing such certification will not be considered by the Immigration Judge unless service is made on the record during a hearing." 8 C.F.R. § 1003.32(a). The Notice of Hearing was served by fax, and by its own regulations the immigration court should not have considered it.
The Government contends that a Ninth Circuit case, Popa v. Holder , upholds the use of a notice of hearing to "cure" a defective Notice to Appear. 571 F.3d 890, 895-96 (9th Cir. 2009). Popa did not address the regulatory question of the immigration court's jurisdiction. It addressed the question of whether a non-citizen who was ordered removed in absentia due to a failure to receive a Notice of Hearing could challenge the removal order based on the absence of time and date information in the Notice to Appear, when the non-citizen failed to provide the Court with an updated mailing address.
When the Supreme Court undercuts the theory or reasoning underlying a prior circuit precedent in such a way that the cases are clearly irreconcilable, the Supreme Court's decision effectively overrules the circuit court's decision. Dent v. Sessions , 900 F.3d 1075, 1081 (9th Cir. 2018). To the extent that Popa held that constructive notice could be found where a *1137 document is undeliverable due to the non-citizen's failure to update a mailing address, it remains good law. To the extent that Popa held that a Notice to Appear is not required to contain time and place information under 8 U.S.C. § 1229(a), it was overruled by Pereira. Thus, the putative notice to appear was not a Notice to Appear, and the Notice of Hearing did not cure that document.
(D) The Immigration Court Lacked Jurisdiction
Under Pereira , the "charging document" contemplated by 8 C.F.R. § 1003.15 was required by statute and regulation to include time and date information. The purported Notice to Appear in this case did not. The Government argues that even if the Notice to Appear was deficient, it would not deprive the immigration court of jurisdiction, analogizing a Notice to Appear with a criminal indictment. To the contrary, the cases that the Government relies on demonstrate why a deficient "charging document" goes to the jurisdiction of the immigration court. See ECF 28 at pp. 14-15, citing United States v. Cotton , 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), United States v. Williams , 341 U.S. 58, 66, 71 S.Ct. 595, 95 L.Ed. 747 (1951), Lamar v. United States , 240 U.S. 60, 64-65, 36 S.Ct. 255, 60 L.Ed. 526 (1916), and United States v. Velasco-Medina , 305 F.3d 839, 845-46 (9th Cir. 2002). Those cases actually show that the immigration court lacked jurisdiction, because it looks to the statutory grant of jurisdiction to determine whether a defective charging document deprives an Article III court of jurisdiction.
Cotton overruled Ex parte Bain , 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), in which the Supreme Court originally held that errors in an indictment deprived a criminal court of jurisdiction. Cotton , 535 U.S. at 629, 122 S.Ct. at 1784, 152 L.Ed.2d 860 (2002). In so holding, the Supreme Court in Cotton explained that the original conception of "jurisdiction," an expansive notion that was "more fiction than anything else," had changed to mean "the court's statutory or constitutional power to adjudicate the case." Id. (emphasis original.) Thus, the Cotton court asked whether the criminal court's jurisdiction was established by the charging document (there, a criminal indictment.)
An Article III Court's jurisdiction in criminal cases extends to "all crimes cognizable under the authority of the United States." Id. , at 630, 122 S.Ct. 1781, 1785 (citing Lamar v. United States , 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526 (1916) ). In Lamar , the Supreme Court looked to the Judiciary Act of the day to determine the jurisdiction of federal district courts to hear criminal cases. Lamar , 240 U.S. 60, 65, 36 S.Ct. 255, 256, 60 L.Ed. 526 (1916). Likewise, in Williams , the Court first looked to the Judiciary Act to determine the jurisdiction of the district court, stating that then, as now, federal district courts have "jurisdiction of offenses against the laws of the United States." Williams , 341 U.S. 58, 65, 71 S.Ct. 595, 599, 95 L.Ed. 747 (1951) (citing 18 U.S.C. § 3231 ). Finally, in Velasco-Medina , the Ninth Circuit held that the State's failure to allege the requisite element of specific intent in an indictment in an Article III district court for attempted illegal reentry did not deprive the Article III district court of jurisdiction, relying on Cotton. Velasco-Medina , 305 F.3d at 846 (9th Cir. 2002).
These cases support the proposition that a court's jurisdiction is rooted in its enabling statute and/or constitutional grant. For an Article III district court, the source of jurisdiction to hear federal criminal cases is 18 U.S.C. § 3231. That statute provides that: "The district courts of the United States shall have original jurisdiction, *1138 exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The jurisdiction of such a court is not established by the filing of a charging document, and thus, a defective charging document does not deprive it of jurisdiction.
Unlike a criminal court, however, the regulatory grant of jurisdiction for an immigration court's jurisdiction is established by a charging document. Thus, each of the above-cited cases support the proposition that an immigration court lacks jurisdiction unless and until a "charging document" is "filed with the Immigration Court by the Service". 8 C.F.R. § 1003.14(a). Pereira makes clear that a putative Notice to Appear that lacks time and place information is not a Notice to Appear. As a result, no valid charging document was filed and jurisdiction never vested.
(2) The Limitation on Collateral Attacks on Underlying Deportation Orders Is Inapplicable When the Purported Deportation Order Was Issued Ultra Vires
The Supreme Court, in Mendoza-Lopez , addressed the issue of whether "an alien who is prosecuted under 8 U.S.C. § 1326... may assert in that criminal proceeding the invalidity of the underlying deportation order." U.S. v. Mendoza-Lopez , 481 U.S. 828, 830, 107 S.Ct. 2148, 2150, 95 L.Ed.2d 772 (1987). 8 U.S.C. § 1326, the statute criminalizing illegal reentry, was originally silent on when, if ever, a criminal defendant could challenge the validity of an underlying deportation order used as an element of the crime. Mendoza-Lopez , 481 U.S. at 837, 107 S.Ct. at 2154. The Supreme Court interpreted this silence as congressional intent not to allow the validity of the deportation to be contestable in a § 1326 prosecution. Id. However, the Court continued to hold that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Id. , at 837-38, 107 S.Ct. at 2155. In that case, the Court held that due process requires the availability of collateral attacks where the defects in the proceeding effectively eliminated the ability for judicial review. Id.
In response, Congress amended 8 U.S.C. § 1326 in the Public Laws of 1996, adding a new subsection titled "Limitation on Collateral Attacks on Underlying Deportation Order." See United States v. Gonzalez-Flores , 804 F.3d 920, 926 (9th Cir. 2015). The new section requires a defendant to prove that (1) they exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). In the Ninth Circuit, there is an implied fourth requirement of prejudice. See United States v. Valdez-Novoa , 780 F.3d 906, 916-17 (9th Cir. 2015). This statutory framework codified Mendoza-Lopez 's narrow holding that a collateral attack must be allowed where the alleged defect precluded other forms of judicial review, but it does not speak to the question before this court: when may a defendant challenge the validity of a deportation order issued from a court that lacked jurisdiction?
"A petitioner is entitled to relief from a defective NTA if he shows that the Immigration Court lacked jurisdiction." Lazaro v. Mukasey , 527 F.3d 977, 980 (9th Cir. 2008) (citation and internal quotation marks and brackets omitted). The Supreme Court in Cotton explained that the *1139 contemporary concept of subject-matter jurisdiction "involved a court's power to hear a case," and thus "can never be forfeited or waived," and that "[c]onsequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." 535 U.S. at 629, 122 S.Ct. at 1784, 152 L.Ed.2d 860 (2002).
Not only does this comport with general rules regarding challenges for jurisdiction, see United States v. Erazo-Diaz , No. 18-cr-0031, 2018 WL 6322168 at *5 (D. Ariz. Dec. 4, 2018) (collecting cases and reaching same conclusion), it makes sense that a challenge to the immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral attacks. Those requirements presume the existence of some proceeding through which the defendant could have raised the basis for the challenge. Just as that collateral attack limitation would not bar a defendant from pointing out that what the prosecutor alleges is a prior deportation order is in fact a blank piece of paper, it does not bar a challenge to an immigration court's jurisdiction that would give the deportation order the same legal effect. Absent jurisdiction, the removal order is void on its face and it is "the duty of this and every other court to disregard it." Wilson v. Carr , 41 F.2d 704, 706 (9th Cir. 1930) ; see also Virgen-Ponce , 320 F.Supp.3d at 1166.
Therefore, notwithstanding 8 U.S.C. § 1326(d), there remains a free-standing due process right to challenge a deportation order issued from a court that lacked subject-matter jurisdiction in a subsequent criminal case in which that order is used as an element, as the immigration court proceeding, its orders, and any protections it may have purported to offer were void ab initio.[1]
Accordingly, Mr. Bastide-Hernandez has shown that he is entitled to relief.
CONCLUSION
Mr. Bastide-Hernandez's 2006 Removal Order is void for lack of jurisdiction. Therefore, it cannot serve as the basis for the Indictment charging Mr. Bastide-Hernandez with illegal reentry.
Accordingly, IT IS ORDERED:
1. Defendant's Motion to Dismiss, ECF No. 26, is GRANTED . The Indictment in the above-captioned matter is DISMISSED.
IT IS SO ORDERED.

If this Court were to apply the 8 U.S.C. § 1326(d) factors, it would likely find them met. Mr. Bastide-Hernandez is not required to show exhaustion of administrative remedies as the proceeding was not an exercise of proper jurisdiction. See Erazo-Diaz , 2018 WL 6322168 at *5 ; United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd. , 669 F.2d 1249, 1253 (9th Cir. 1982). Mr. Bastide-Hernandez can also show that the 2006 Removal Order was fundamentally unfair. Proceedings are "fundamentally unfair" if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceedings, and (2) he suffered prejudice as a result of the defects." Zarate-Martinez , 133 F.3d at 1197. Mr. Bastide-Hernandez's due process rights were violated through the issuance of an ultra vires removal order, and if he was not present at the removal hearing he may have been entitled to rescission of the order under 8 U.S.C. § 1229a(b)(5)(C)(ii).