**UNITED STATES of America,
Plaintiff,**

v.

**Joel SALDIVAR–VARGAS, Defendant.**

**No. 02CR3303.**

United States District Court,
S.D. California.

July 7, 2003.

Orlando Gutierrez, Assistant United States Attorney, San Diego, CA, for Plaintiff.

Gary P. Burcham, San Diego, CA, for Defendant.

## ORDER DENYING MOTION TO DISMISS INDICTMENT

RHOADES, District Judge.

### I. Introduction

Defendant Joel Saldivar–Vargas ("defendant") is charged in a one-count indictment with being an alien found in the United States after previously being "excluded, deported and removed" in violation of 8 U.S.C. § 1326. Defendant moves to dismiss the indictment on the ground that his prior removal proceeding may not be used to demonstrate that he was previously removed due to the immigration judge's failure to inform him of, and to allow him to apply for, certain relief. For the reasons set forth below, the motion is denied.

### II. Background

Defendant, a citizen of Mexico, was granted legal permanent resident status on December 1, 1990. On April 7, 1994, defendant pleaded guilty to rape by a foreign object. He served 365 days, or one year, in county jail. Under the immigration laws then in effect, defendant was not deportable or removable.

After his conviction, Congress made sweeping changes to the immigration laws by passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104–132, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), P.L. 104–208. As will be discussed in detail, *infra*, after passage of these acts, defendant became subject to removal, which replaced deportation after passage of the IIRIRA.[1] *See Jimenez–Angeles v. Ashcroft,* 291 F.3d 594, 597 (9th Cir.2002) (when the IIRIRA took effect on April 1, 1997, the term "deportation" was replaced with the term "removal"); *see also* 8 U.S.C. § 1229b(b).

Subsequently, in July 1997, defendant was found removable by an immigration judge ("IJ") for being an aggravated felon. Defendant was asked whether he wished to appeal, and defendant indicated he did not. Defendant was not informed of the availability of discretionary relief under Immigration and Nationality Act ("INA") § 212(c). Defendant was subsequently removed from the United States..

The indictment charges that on November 18, 2002, defendant, an alien who was previously "excluded, deported and removed," was found in the United States without the express consent of the Attorney General in violation of 8 U.S.C. § 1326.

### III. Analysis

#### A. Is Defendant Mounting a Permissible Collateral Attack?

Before considering the merits of defendant's claim that the IJ precluded him from seeking § 212(c) relief, the permissibility of a collateral attack of defendant's removal order must be considered.

##### 1. The Requirements for Mounting a Collateral Attack

The right of a criminal defendant to collaterally attack a prior deportation or removal proceeding was first recognized in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In that case, the Supreme Court recognized a limited right to collaterally

---

1. Defendant's immigration proceeding was commenced in July 1997. Thus, defendant was removed rather than deported.

attack a prior conviction "where the defects in an administrative proceeding foreclose judicial review of that proceeding...." *Id.* at 838, 107 S.Ct. 2148. In reaching its conclusion that the aliens in that case had met the requirements for collaterally attacking their convictions, *Mendoza–Lopez* Court noted that it had not been asked to review the lower courts' determination that the aliens' rights to due process were violated by the IJ's failure to explain their right to relief from deportation and their right to appeal. It also noted that the United States had asked it to assume that the aliens' deportation hearings were "fundamentally unfair." *Id.* at 839, 107 S.Ct. 2148. The Court then found that the aliens' waivers of their right to appeal were not "considered or intelligent" due to the IJ's failure to inform them of their right to relief from deportation. The Court concluded that "[b]ecause the waivers of the rights to appeal were not considered or intelligent, [the aliens] were deprived of judicial review of their deportation proceeding." *Id.* at 840, 107 S.Ct. 2148. Consequently, the Court held that the government could not rely on the aliens' deportation orders to prove the deportation element of the criminal offense.

Subsequent to *Mendoza–Lopez,* Congress enacted Section 441(a) of the AEDPA, which added U.S.C. § 1326(d). Section 1326(d) provides in relevant part:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order... unless the alien demonstrates that -

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Given the similarly between § 1326(d) and the analysis in *Mendoza–Lopez,* it appears that by passing § 1326(d) Congress intended to codify the Court's holding in *Mendoza–Lopez* while adding an additional exhaustion requirement. Regardless, however, both *Mendoza–Lopez* and § 1326(d) require that the deportation proceeding improperly deprived the alien of the opportunity for judicial review. Thus, the court turns to the issue of whether defendant here was deprived of the opportunity for judicial review here.[2]

As already discussed, one way in which an alien is deprived of the opportunity for judicial review is if the immigration judge fails to inform the alien that he is entitled to appeal or to apply for relief from deportation. *See Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148. Although defendant

---

**2.** As noted, § 1326(d) contains an exhaustion requirement that was not mentioned in *Mendoza–Lopez.* Defendant contends that he is excused from this exhaustion requirement because it would have been futile for him to exhaust. Because, for reasons set forth below, the court ultimately concludes that defendant has failed to demonstrate that the deportation proceeding improperly deprived him of the opportunity for judicial review as required by § 1326(d)(2), the court need not determine whether it would have been futile for defendant to exhaust as required by § 1326(d)(1).

Furthermore, "[w]hen a petitioner moves to dismiss an indictment under 8 U.S.C. § 1326 based on a due process violation in the underlying deportation proceeding, he must show prejudice resulting from the due process violation." *United States v. Muro–Inclan,* 249 F.3d 1180, 1184 (9th Cir.2001). Because defendant has failed to make the requisite showing with respect to the other requirements for a collateral challenge, the court need not determine whether defendant has established prejudice.

here was asked whether he wished to appeal his deportation order, he was not informed that he was entitled to apply for relief pursuant to § 212(c). If defendant is correct that he was entitled to such relief, then he was improperly deprived of the opportunity for judicial review. The court will consider in section B whether defendant was entitled to apply for § 212(c) relief.

### 2. Did Defendant Waive His Right to Collaterally Attack His Deportation Order?

■■■ A related yet distinct legal principal is that an alien is barred from collaterally challenging a deportation order when the alien has "'validly waived the right to appeal that order' during the deportation proceeding." *United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.), *cert. denied,* 534 U.S. 879, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001) (quoting *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000)). It is undisputed that defendant waived his right to appeal his deportation order; however, to "validly" waive the right to appeal, the waiver must be both "'considered and intelligent.'" *Muro–Inclan,* 249 F.3d at 1182 (quoting *Arrieta,* 224 F.3d at 1079). A waiver "is not 'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation' but the Immigration Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'" *Muro–Inclan,* 249 F.3d at 1182 (quoting *Arrieta,* 224 F.3d at 1079).

Defendant contends that his waiver of his right to appeal was not "considered and intelligent" because the immigration judge failed to inform him of his right to relief pursuant to § 212(c). If defendant is correct that he was entitled to such relief, then his waiver of his right to appeal was not "considered and intelligent." Again, the court will consider in section B

whether defendant was entitled to § 212(c) relief.

### 3. Conclusion Regarding the Permissibility of Defendant's Collateral Attack

Because the merits of defendant's challenge to his deportation order are intertwined with the preliminary question of whether defendant may mount such an attack in the first place, the court turns to the issue of whether defendant was entitled to apply for § 212(c) relief.

### B. Did the Immigration Judge Err in Denying Defendant the Opportunity to Seek Relief Pursuant to § 212(c)?

Defendant contends that the immigration judge erred in failing to inform him of, and to allow him to apply for, § 212(c) relief. To better understand defendant's arguments, a brief chronological synopsis of the relevant law and facts is helpful.

At all relevant times, INA § 237(a)(2)(A)(iii) has provided for deportation or removal of an alien convicted of an aggravated felony at any time after admission. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) [previously codified at 8 U.S.C. § 1251(a)(2)(A)(iii)]. Prior to its abolition, INA § 212(c) [previously codified at U.S.C. § 1182(c)] was interpreted as granting the Attorney General discretion to waive deportation for certain lawful permanent resident aliens who had accrued seven years of lawful domicile in the United States. Originally, all deportable aliens, including those convicted of an "aggravated felony," were eligible to apply for § 212(c) relief. *See Scheidemann v. INS,* 83 F.3d 1517, 1519 (3d Cir.1996). In 1990, Congress passed the Immigration Act of 1990, which, *inter alia,* amended § 212(c) to preclude discretionary relief for aliens convicted of an "aggravated felony" who had served a term of imprisonment of at

least five years. *See* Pub.L. No. 101–649, § 511, 104 Stat. 4978, 5052 (1990) (amending 8 U.S.C. § 1182(c)); *see also Gjonaj v. INS*, 47 F.3d 824, 826 n. 1 (6th Cir.1995) (setting forth statute as amended in 1990).

On April 7, 1994, defendant pleaded guilty to rape by a foreign object. He received 365 days, or one year, in county jail. Although this crime was a "crime of violence" under the immigration laws at the time, a "crime of violence" was only an "aggravated felony," and therefore a deportable offense, if the term of imprisonment was at least five years. *See United States v. Viramontes–Alvarado*, 149 F.3d 912, 918 (9th Cir.), *cert. denied*, 525 U.S. 976, 119 S.Ct. 434, 142 L.Ed.2d 354 (1998) ("The Immigration Act of 1990 amended Section 1101(a)(43) to expand the definition of aggravated felonies to include 'any crime of violence . . . for which the term of imprisonment imposed is at least 5 years.' "); *see also United States v. Go-*

*mez–Rodriguez*, 96 F.3d 1262, 1263 (9th Cir.1996) (en banc) (citing Pub.L. No. 101–649, § 501, 104 Stat. at 5048). The parties agree that because defendant served only a one-year sentence, defendant's conviction did not render him deportable at the time of his plea.

Subsequent to defendant's conviction, Congress passed the AEDPA. Section 440(d) of the AEDPA, which was enacted on April 24, 1996, amended § 212(c) to, *inter alia*,[3] preclude relief for aliens deportable as a result of an aggravated felony regardless of the amount of time served. *See Mattis v. Reno*, 212 F.3d 31, 35 (1st Cir.2000), *overruled on other grounds*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). This change to § 212(c) had no effect on defendant because, even though AEDPA § 440(d) made all aggravated felons ineligible for § 212(c) relief, defendant's conviction remained a non-aggravated felony.[4]

---

**3.** Although not relevant here, AEDPA § 440(d) also amended § 212(c) to preclude relief for aliens deportable for having committed a qualifying controlled substance offense. *See Armendariz–Montoya v. Sonchik*, 291 F.3d 1116, 1118 (9th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 2247, 156 L.Ed.2d 110 (2003).

**4.** Defendant's conviction was not converted to an aggravated felony because the AEDPA left unchanged INA § 101(a)(43)(F) [codified at 8 U.S.C. § 1101(a)(43)(F)], which provided at the time of defendant's conviction that a crime of violence only qualified as an aggravated felony if the sentence was for five years. As noted, defendant was imprisoned for one year.

At first glance, it may appear curious that § 212(c), which had precluded relief for aliens convicted of aggravated felonies with a five or more year sentence, was amended to preclude relief for aliens with an aggravated felony conviction regardless of the length of the sentence, while at the same time defendant's conviction remained an non-aggravated felony because his sentence was less than

five years. This curiosity is easily explained, however. Many felonies in addition to crimes of violence qualify as aggravated felonies. *See* 8 U.S.C. § 1101(a)(43) ("aggravated felony" includes murder, rape or sexual abuse of a minor; illicit trafficking in a controlled substance; illicit trafficking in firearms, destructive devices or explosive materials; offenses related to money laundering; certain theft offenses; offenses related to child pornography, *etc.*). While some of these offenses are only considered aggravated felonies if the sentence is for a certain length of time, *see, e.g.,* 8 U.S.C. § 1101(a)(43)(G) (a theft offense or burglary offense for which the term of imprisonment is at least one year), other crimes are deemed aggravated offenses regardless of the length of the sentence. *See, e.g.,* 8 U.S.C. § 1101(a)(43)(A) (the murder, rape or sexual abuse of a minor is an aggravated felony regardless of the sentence). Although from 1990 to 1996, § 212(c) relief was precluded for aliens convicted of an aggravated felony with a term of imprisonment of five years or more, this five-year requirement was unrelated to the five-year requirement necessary to transform a crime of violence into an aggravated felony.

Congress subsequently passed the IIRIRA, which went into effect in April 1997. *See INS v. St.Cyr*, 533 U.S. 289, 315, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). IIRIRA § 321(a) amended INA § 101(a)(43) [codified at 8 U.S.C. § 1101(a)(43) ], which sets forth the definition of "aggravated felony." Of relevance here is that IIRIRA § 321(a)(3) amended the definition of "aggravated felony" to include a "crime of violence" for which the term of imprisonment is at least one year. *See Matsuk v. INS*, 247 F.3d 999, 1001 n. 9 (9th Cir.2001). Because defendant served a one year sentence, pursuant to IIRIRA § 321(a)(3) defendant's conviction became an aggravated felony for which he was subject to removal pursuant to INA § 237(a)(2)(A)(iii). At the same time, IIRIRA § 304(b) repealed INA § 212(c) altogether.

In July 1997, after the effective dates of the AEDPA and IIRIRA provisions applicable here, defendant was found removable, was notified of his right to appeal, waived that appeal, and was removed. The IJ did not inform defendant that he could apply for § 212(c) relief. It is that omission that defendant challenges here.

### 1. Is INS v. St. Cyr dispositive of this case?

■ Defendant contends that the Supreme Court case of *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) is controlling authority and dictates that he is not precluded from applying for § 212(c) relief. In *St. Cyr*, the defendant had pled guilty to an offense that, at the time of his plea, made him deportable but did not preclude him from seeking relief from deportation pursuant to INA § 212(c). Subsequently, Congress passed IIRIRA § 304(b), which repealed § 212(c). Deportation proceedings were initiated against St. Cyr after the effective date of the IIRIRA. St. Cyr was found deportable, and the IJ concluded that he was not eligible for relief under § 212(c). On ap-

peal, St. Cyr argued that the subsequent restriction on discretionary relief did not apply to aliens, like himself, who pleaded guilty to a deportable crime prior to their enactment. The Supreme Court agreed, holding that § 212(c) relief remains available for aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, *would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.*" *St. Cyr*, 533 U.S. at 326, 121 S.Ct. 2271 (emphasis added).

*St. Cyr* is not dispositive here because, unlike St. Cyr, defendant was not eligible for § 212(c) relief at the time of his plea because his plea did not render him immediately deportable or removable. This distinction is a critical one, as recognized by the Ninth Circuit in *United States v. Velasco–Medina*, 305 F.3d 839 (9th Cir.2002).

In *Velasco–Medina*, the defendant was admitted to the United States as a lawful permanent resident in 1967. Between 1981 and 1996, he was convicted of at least nine crimes involving drug and alcohol-related offenses, spousal abuse, and grand theft. In June 1996, after the passage of the AEDPA but before the passage of the IIRIRA, Velasco–Medina pleaded guilty to second degree burglary, petty theft with a prior, and being under the influence of a controlled substance. For these offenses, he received a one year prison term. Under the laws then in effect, Velasco–Medina's burglary conviction was not an aggravated felony because the prison term imposed was less than five years. Therefore, as is the case with defendant here, the AEDPA did not effect Velasco–Medina because his conviction was not deemed an aggravated felony under the then-current law.

In January 2000, after the effective date of IIRIRA § 304, which repealed INA § 212(c), removal proceedings commenced

against Velasco–Medina. The IJ issued an order removing him to Mexico and advised him of his right to appeal. Velasco–Medina waived his right to appeal and was removed the same day.

Velasco–Medina attempted to reenter in June 2000 and was arrested. Velasco–Medina, relying on *St. Cyr*, moved to dismiss the indictment on the ground that the retroactive application of AEDPA and IIRIRA in his earlier deportation hearing impermissibly denied him the opportunity for discretionary relief from deportation under § 212(c). The Ninth Circuit affirmed the district court's denial of the motion. In doing so, the Ninth Circuit explained:

> The considerations that supported maintaining § 212(c) relief for St. Cyr are absent for Velasco–Medina. At the time of his guilty plea, St. Cyr's aggravated felony conviction rendered him deportable but qualified him for § 212(c) relief; he enjoyed "vested rights acquired under existing law." [*St. Cyr*, 533 U.S.] at 321, 121 S.Ct. 2271, 150 L.Ed.2d 347. By contrast, Velasco–Medina was never eligible for discretionary relief under § 212(c) because his guilty plea did not render him deportable; unlike St. Cyr, he never possessed "vested rights acquired under existing laws." Thus, Velasco–Medina could not have developed the sort of settled expectations concerning § 212(c) relief that informed St. Cyr's plea bargain and that animated the *St. Cyr* decision.

*Velasco–Medina*, 305 F.3d at 849. Like Velasco–Medina, defendant here "was never eligible for discretionary relief under § 212(c) because his guilty plea did not render him deportable; unlike St. Cyr, he never possessed 'vested rights acquired under existing laws.'" *Id.* at 849 (quoting *St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271). Thus, defendant here "could not have developed the sort of settled expectations concerning § 212(c) relief that informed

St. Cyr's plea bargain and that animated the *St. Cyr* decision." *Velasco–Medina*, 305 F.3d at 849. Consequently, as in *Velasco–Medina*, "[t]he considerations that supported maintaining § 212(c) relief for St. Cyr are absent" here. *Id.* at 849.

The Ninth Circuit in *Velasco–Medina* also found it "noteworthy" that "at the time of Velasco–Medina's guilty plea, AEDPA had foreclosed § 212(c) relief for legal permanent residents convicted of aggravated felonies." *Id.* Thus, it concluded that Velasco–Medina's "settled expectations must have been shaped by the then-current legal landscape." *Id.* As the Ninth Circuit explained:

> Here, AEDPA provided Velasco–Medina with fair notice that discretionary relief under § 212(c) would be unavailable in the event his conviction was reclassified as an aggravated felony. To the extent he anticipated the continued availability of § 212(c) relief after his guilty plea, his expectations were neither reasonable nor settled under *St. Cyr*.

*Velasco–Medina*, 305 F.3d at 850.

Defendant attempts to distinguish *Velasco–Medina* on the ground that because defendant was convicted prior to the passage of the AEDPA, the AEDPA did not provide him with notice that § 212(c) would be unavailable to him if his conviction was reclassified as an aggravated felony. However, defendant's attempt to distinguish *Velasco–Medina* is unavailing.

First, the Ninth Circuit merely found it "noteworthy" that the AEDPA had put Velasco–Medina on notice that the law could change and render him ineligible for § 212(c) relief. It does not appear from a careful reading of *Velasco–Medina* that this was a controlling factor in the Ninth Circuit's rejection of Velasco–Medina's collateral attack of his prior deportation. Rather, it appears that the crux of the opinion in *Velasco–Medina* was that, un-

like St. Cyr, Velasco–Medina could not have developed any settled expectation concerning § 212(c) relief because he was never eligible for such relief in this first place.

Moreover, here, defendant was provided with sufficient notice that § 212(c) could be unavailable in the event his conviction was reclassified as an aggravated felony to render any expectations regarding the continued availability of § 212(c) relief neither reasonable nor settled. As noted *supra*, in 1990, prior to defendant's conviction, Congress amended § 212(c) to preclude discretionary relief for aliens convicted of an "aggravated felony" who had served a term of imprisonment of at least five years. *See* Pub.L. No. 101–649, § 511, 104 Stat. 4978, 5052 (1990) (amending 8 U.S.C. § 1182(c)). Prior thereto, all aliens had been eligible for such relief. *See Gjonaj*, 47 F.3d at 826 n. 1. Thus, defendant was on notice that Congress could amend the immigration laws to narrow the category of aliens eligible for § 212(c) relief. In light of the 1990 amendment, which precluded relief for aggravated felons who served five years, it certainly was foreseeable that Congress could amend § 212(c) to preclude relief for all aggravated felons regardless of the amount of time served, which it in fact did in 1996 pursuant to AEDPA § 440(d). Although one could argue about whether an alien such as Velasco–Medina or defendant here could reasonably anticipate that his conviction would be recharacterized as an aggravated felony, the Ninth Circuit assumed that Velasco–Medina could so anticipate, and there is no reasoned basis for refusing to apply such an assumption here. Accordingly, while Velasco–Medina was put on notice by the passage of the AEDPA that § 212(c) "would" be unavailable in the event his conviction was reclassified as an aggravated felony, defendant here was placed on notice by the passage of the Immigration Act of 1990 that discretionary relief under § 212(c) "could" be unavailable in the event his conviction was reclassified as an aggravated felony. Although the notice afforded defendant here was slightly less strong than the notice afforded Velasco–Medina, such notice was sufficient to render defendant's expectations regarding the future availability of relief to which he was not currently entitled "neither reasonable nor settled under *St. Cyr.*" *Velasco–Medina*, 305 F.3d at 850.

In conclusion, *St. Cyr* is not controlling authority and therefore does not dictate that defendant should have been informed that he was eligible to apply for § 212(c) relief.

*2. Does the Retroactive Application of IIRIRA to Saldivar–Vargas violate the Fifth Amendment Due Process Clause?*

Defendant raises the alternative argument that the application of the IIRIRA to him violates the Fifth Amendment Due Process Clause. As will be seen, this argument is without merit.

As discussed *supra*, IIRIRA § 321(a)(3) amended the definition of "aggravated felony" to include a crime of violence for which the term of imprisonment is one year or more. Unlike with respect to IIRIRA § 304(b), Congress made it clear that it intended for IIRIRA § 321(a) to be applied to convictions entered prior to the IIRIRA. *See St. Cyr*, 533 U.S. at 318–319 n. 43, 121 S.Ct. 2271. Specifically, IIRIRA § 321(b) provides that "Section 101(a)(43) [8 U.S.C. 1101(a)(43)] is amended by adding at the end the following new sentence: 'Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.'" Moreover, IIRIRA § 321(c) provides that "[t]he amendments made by this section

shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred...." In *Aragon–Ayon v. INS,* 206 F.3d 847 (9th Cir.2000), the government argued that these provisions "contain a clear and express directive from· Congress that the amended definition of aggravated felony should be applied to any and all criminal violations committed by an alien after his or her entry into the United States, whether they were committed before or after the amended definition went into affect." As the Ninth Circuit explained, § 321(b) of IIRIRA does not leave room for argument to the contrary. Consequently, the Ninth Circuit concluded that statute could be retroactively applied to Aragon–Ayon so as to render him deportable.

Clearly, as a matter of statutory interpretation, § 321(a) applies retroactively. *See Aragon–Ayon,* 206 F.3d at 853 ("We are satisfied that Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed, and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order."). The court now turns to the issue that was neither raised nor considered in *Aragon–Ayon:* whether the retroactive application of § 321(a) violates the right to due process or equal protection.[5] *See St. Cyr,* 533 U.S. at 316, 121 S.Ct. 2271. ("Despite the dangers inherent in retroactive legislation, it is beyond dispute that, *within constitutional limits,* Congress has the power to enact laws with retrospective effect.") (emphasis added).

First, defendant contends that his reliance on the state of the law at the time of his June 1996 guilty plea created a constitutionally-protected interest in his eligibility for § 212(c) relief, the deprivation of which violates his right to due process. In support of his argument, defendant attempts to draw an analogy between his facts and those in *St. Cyr,* arguing that his expectation regarding eligibility for § 212(c) relief was greater than St. Cyr's. However, as discussed *supra,* because defendant was not eligible for § 212(c) relief at the time of his plea and because § 212(c) relief was not available to him at the time he became removable, he never possessed a vested right or interest in § 212(c) relief. Thus, defendant has failed to establish that he has ever possessed a right or interest in § 212(c) relief that is subject to constitutional protection.

Defendant also contends that retroactive application of the IIRIRA to him violates his due process and equal protect rights[6] because it is irrational to afford § 212(c) relief to aliens such a St. Cyr, who have always been deportable due to the seriousness of their convictions, while denying such relief to aliens such as defendant, whose convictions are less serious and have only recently been determined to be serious enough to warrant deportation.

■■■■ For defendant's equal protection argument to succeed, defendant must "establish that his treatment differed from that of similarly situated persons." *Dill-*

---

5. Although the defendant in *Aragon–Ayon* raised a constitutional challenge to the retroactivity of the IIRIRA, that challenge was not made as to the retroactivity of § 321(a).

6. Although defendant refers to the "Equal Protection Clause" in his papers, in actuality defendant's challenge must be made pursuant to the equal protection component of the Fifth

Amendment Due Process Clause. *See Menezes v. INS,* 601 F.2d 1028 (9th Cir.1979) ("Although the federal government and its agencies are not bound by the Fourteenth Amendment equal protection clause, the Fifth Amendment due process clause has an equal protection component which imposes similar, but not identical, limitations on government actions.")

*ingham v. INS,* 267 F.3d 996, 1007 (9th Cir.2001). Defendant must also demonstrate that the difference in treatment is "wholly irrational.'" *Perez–Oropeza v. INS,* 56 F.3d 43, 45 (9th Cir.1995) ("[S]tatutory restrictions which limit relief from deportation to certain classes of aliens 'are valid unless wholly irrational.'") (quoting *Garberding v. INS,* 30 F.3d 1187, 1190 (9th Cir.1994)).

Similarly, to succeed on this particular due process claim, defendant must demonstrate that there is no rational basis for the disparate treatment. *See Gray v. First Winthrop Corp.,* 989 F.2d 1564, 1571 (9th Cir.1993) ("[T]he Supreme Court has consistently held that Congress may enact legislation with retroactive effect so long as it comports with Due Process by passing constitutional muster under rational basis scrutiny.")

 Defendant has failed to demonstrate that his treatment under IIRIRA § 321 is different from those of "similarly situated" aliens. Defendant compares his treatment to the treatment of aliens such as St. Cyr; however, defendant has failed to demonstrate that he and aliens such as St. Cyr are similarly situated. As already discussed, St. Cyr, who became deportable because of his plea, had a settled expectation regarding his eligibility for § 212(c) relief at the time of his plea. In contrast, defendant, who was not deportable at the time of his plea and was not eligible for § 212(c) relief at the time he became deportable based upon the law then in effect, could not have had a settled expectation about his eligibility for § 212(c) relief. There is clearly a rational basis for affording § 212(c) relief only to those aliens possessing a settled expectation regarding their eligibility for such relief. Thus, the different treatment afforded these different classes of aliens violates neither defendant's due process nor his equal protection rights.

## IV. Conclusion

Because defendant has failed to demonstrate that his deportation proceeding improperly deprived him of the opportunity for judicial review of his deportation order, defendant is not entitled to collaterally attack his deportation. Nonetheless, even if such a collateral attack were permissible, such an attack would be unsuccessful because defendant is not entitled to § 212(c) relief.

**IT IS SO ORDERED.**