UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador LEOS–MALDONADO,
Defendant–Appellant.

No. 01–10291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 2002.

Filed Sept. 9, 2002.

Philip Kimble, Tucson, AR, for the appellant.

Richard E. Gordon, Assistant United States Attorney, Tucson, AR, for the appellee.

Before SNEED, HUG and BERZON, Circuit Judges.

## OPINION

SNEED, Circuit Judge.

Salvador Leos–Maldonado ("Leos") appeals the district court's denial of his motion for acquittal. He was convicted and sentenced for unauthorized reentry into the United States after having been deported. *See* 8 U.S.C. § 1326. We affirm.

## I. BACKGROUND

Two months after being deported to Mexico, Leos, along with six other Mexican nationals, climbed the fence along the international border. Sometime after crossing the border, border patrol surveillance by cameras spotted a group of suspected illegal aliens "cresting a ridge." A border patrol agent confronted the group approximately 300 yards from the border on the American side, where they were hiding on the side of a hill. Leos admitted to being a deported alien. He was arrested and indicted for unauthorized reentry based on entering, attempting to enter, or having

been found in the United States without consent.

At the district court bench trial, Leos moved for a judgment of acquittal. The court denied the motion, and Leos was convicted and sentenced. Leos appeals the district court's denial of his acquittal, asserting that he was never free from official restraint and that this condition: (1) precluded his entry; (2) prevented him from being "found in" the United States; and (3) impaired his ability to attempt an entry. He also argues, for the first time in his reply brief, that his indictment was defective because it omitted the specific intent element of attempted entry.

## II. STANDARD OF REVIEW

■ We review the denial of a Rule 29 motion for acquittal de novo. *United States v. Pacheco–Medina*, 212 F.3d 1162, 1163 (9th Cir.2000). "Consequently, this court must review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citations and internal quotations omitted). The district court's findings of fact are reviewed for clear error. *United States v. Doe (R.S.W.)*, 136 F.3d 631, 636 (9th Cir. 1998).

## III. DISCUSSION

8 U.S.C. § 1326 prohibits deported aliens from reentering the United States without authorization. Reentry occurs when such an alien "enters, attempts to enter, or is at any time found in, the United States" without consent. 8 U.S.C. § 1326. It is undisputed that Leos traveled from Mexico to the United States without authorization. The issue is whether there is sufficient evidence of: (1) an entry; (2) an attempted entry; or (3) being "found in" the United States. Because these three offenses are distinct, *see Pa-*

*checo–Medina*, 212 F.3d at 1165, the acquittal denial must be affirmed if there is sufficient evidence to support a conviction on any one of the three grounds. In this case, we need not decide whether Leos entered or was found in the United States because there is sufficient evidence of his attempted entry.

■ Attempted entry essentially requires two elements: (1) the specific intent to reenter without consent; and (2) an overt act that was a substantial step towards this illegal reentry. *See United States v. Gracidas–Ulibarry*, 231 F.3d 1188, 1196 (9th Cir.2000) (en banc). Leos argues that his conviction cannot be based on attempted entry because of deficiencies with respect to each of these elements. We disagree.

### A. Overt Act Towards Reentry

■ First, Leos argues that he could not have taken a substantial step towards reentry because he was under official restraint (the surveillance cameras) that prevented him from completing an entry into the United States. Assuming without deciding that Leos was under official restraint to a sufficient degree as to preclude an entry, *see Pacheco–Medina*, 212 F.3d at 1162, any such restraint does not also ipso facto defeat a conviction based on attempted reentry. The mere fact that an alien is under official restraint does not make substantial steps toward entry impossible. *See, e.g., Gracidas–Ulibarry*, 231 F.3d at 1191–92, 1197–98 (finding alien guilty of attempted entry—even though under conspicuous restraint by government inspectors—when alien caught lying to authorities about his citizenship). It matters not whether the defendant's overt act takes the form of a surreptitious border crossing or a misrepresentation of legal status. To the extent that Leos argues that § 1326 requires the government to prove deception at the port of entry to support an

attempt conviction, we reject his contention. *See United States v. Barnes,* 244 F.3d 331, 333–34 (2d Cir.2001).

■ Attempted entry occurs "when a previously deported alien 'makes an effort' or 'tries' to reenter the United States." *United States v. Corrales–Beltran,* 192 F.3d 1311, 1319 (9th Cir.1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000). "It is the act of crossing the boundary line into the United States." *Id.* It is clear that Leos crossed the border. The evidence shows that he scaled the international border wall, crouching down to avoid detection after landing on American soil. He then traveled toward the hills for approximately ten minutes before finding a place to hide from the view of immigration trucks. Nothing in the statute or our cases suggests that such actions do not constitute an attempt to enter. Leos's efforts to convince us otherwise are without merit.

## B. Specific Intent to Enter Without Authorization

Specific intent is also an element of the crime of attempted reentry and consequently must be alleged in the indictment. *See United States v. Pernillo–Fuentes,* 252 F.3d 1030, 1032 (9th Cir.2001); *Gracidas–Ulibarry,* 231 F.3d at 1196. Leos's indictment failed to allege the required intent. It is true that this failure, if timely raised, is "a fatal flaw requiring dismissal of the indictment." *Pernillo–Fuentes,* 252 F.3d at 1032.

■ Leos did not raise this deficiency, however, until appeal. While "a claim of defective indictment can be raised at any time," *United States v. James,* 980 F.2d 1314, 1316 (9th Cir.1992), review of an untimely objection to the sufficiency of the indictment is limited to the plain error test of Federal Rule of Criminal Procedure 52(b). *United States v. Cotton,* ⎯ U.S.

⎯, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *United States v. Velasco–Medina,* 305 F.3d 839 (9th Cir.2002).

■ Under the plain error standard, relief is not warranted unless: (1) there has been error; (2) the error is plain; and (3) the error affects substantial rights. *Jones v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Even then, the error must "seriously affect the fairness, integrity, or public reputation of judicial proceedings" before we can exercise our discretion to notice the error. *United States v. Olano,* 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ Leos cannot meet the third condition. In order to affect his "substantial rights," the error "must have affected the outcome of the District Court proceedings." *United States v. Lussier,* 128 F.3d 1312, 1317 (9th Cir.1997). In other words, the error must be not only plain but also prejudicial. *See Velasco–Medina,* 305 F.3d at 846–47.

■ In *Velasco–Medina,* we applied the plain error test to a similarly defective indictment. *Id.* at 845–47. In that case, we held that the untimely objection to the indictment did not prejudice the defendant—even though the indictment was plainly defective. *Id.* at 846–47. We noted that when, as here, the indictment specifically refers to 8 U.S.C. § 1326, it places the defendant "on notice of the charge against him and the specific intent necessary to support a conviction." *Id.*

Leos does not claim that he was in any way prejudiced in preparing and presenting his defense because of the indictment's failure to allege specific intent. He did not raise the insufficiency of his indictment until his *reply brief* (after the government's candid admission in its brief of the defect). We have previously observed that:

a late challenge suggests a purely tactical motivation and is needlessly wasteful because pleading defects can usually be readily cured through a superseding indictment before trial. Additionally, the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense, because one can expect that the challenge would have come earlier were there any real confusion about the elements of the crime charged. For all these reasons, indictments which are tardily challenged are liberally construed in favor of validity.

*United States v. Lo,* 231 F.3d 471, 481 (9th Cir.2000) (citations and internal quotations omitted).

Furthermore, Leos testified on cross examination that he knew that it was illegal to enter the United States, both because he had been deported before and because he was turned away at the border the day before his crossing. This evidence is sufficient to establish his guilt under a proper indictment, *viz,* one that alleges that he intended to enter the country without consent.

Even assuming, *arguendo,* that Leos would not have admitted that he knew it was illegal to reenter the country if the indictment had properly alleged specific intent, substantial evidence existed to permit the district court to nevertheless conclude that Leos possessed the requisite intent to reenter the United States without authorization. *See Gracidas–Ulibarry,* 231 F.3d at 1197–98 (holding that constitutional error of failing to instruct jury concerning specific intent for attempted reentry was harmless because "the government offered undisputed testimony ... that demonstrated [the alien's] conscious desire to enter the United States without first obtaining express consent."). The day before he was apprehended, Leos had been turned away at a border checkpoint because of expired documents. In addition,

he had been formally deported only one month and one day before he was caught attempting to reenter, and he had received a warning letter notifying him of the consequences of reentering the United States without the Attorney General's permission. When confronted by border patrol, Leos admitted that he had recently been deported and was not a U.S. citizen. Finally, Leos admits that he purposely hid from border patrol immediately after he hopped over the border fence, crouching down and waiting for an opportunity to move undetected further into the U.S. In light of the overwhelming evidence demonstrating his intent to enter without consent, Leos's assertions on appeal that his substantial rights were violated is unpersuasive.

## IV. CONCLUSION

While we might have been persuaded to set aside Leos's conviction had he timely raised a challenge to the indictment in the district court, his tardy challenge limits our review to plain error. The error in the indictment did not affect his substantial rights, and there was overwhelming evidence that Leos attempted to enter and intended to do so without authorization. Concluding that there was sufficient evidence to convict him for attempted reentry, we need not review whether he was free from official restraint so as to complete an actual entry or whether he was "found in" the United States. The denial of his acquittal is

**AFFIRMED.**