**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

TIMOTHY W. OMER,
            *Defendant-Appellant.*

No. 03-30513

D.C. No.
CR-03-00009-DWM

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            v.

TIMOTHY W. OMER,
            *Defendant-Appellee.*

No. 03-30544

D.C. No.
CR-03-00009-DWM

ORDER

Filed October 31, 2005

Before: Michael Daly Hawkins, Sidney R. Thomas, and
M. Margaret McKeown, Circuit Judges.

Order;
Dissent by Judge Graber

## ORDER

The panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc. A judge of the court requested a vote on whether to rehear the case en banc, but the request failed to receive a majority of votes of the non-recused active judges in favor of en banc rehearing.

14863

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

---

GRABER, Circuit Judge, with whom KOZINSKI, O'SCANNLAIN, BYBEE, CALLAHAN, and BEA, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I respectfully dissent from the court's decision not to take this case en banc. We should take this opportunity to reconsider the rule that our prior precedent required the three-judge panel to apply: *automatic* reversal of any conviction in which the defendant timely, and correctly, objected that an element of the crime was missing from the indictment. *See United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) (holding that such a deficiency is not subject to harmless error review). An absolute rule makes no sense. When the defendant has actual notice of the missing element in advance of trial, evidence of the missing element is introduced, the jury is properly instructed about the element, and the finder of fact finds the element beyond a reasonable doubt, the defendant may not have been prejudiced by the omission; reversal should not be compelled. We ought not cling to a rule that drains judicial resources when we can review—indeed, have reviewed, in very similar circumstances—the prejudice caused by the omission of an element from an indictment.

A. *The* Du Bo *decision, establishing the "automatic reversal rule" at issue, rested on three premises.*

The court in *Du Bo* held that, "if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is . . . a fatal flaw requiring dismissal of the indictment." 186 F.3d at 1179. We supported that automatic reversal rule with three premises.

The first premise was jurisdictional. We asserted that an indictment that omits an element "does not properly allege an offense against the United States" and thereby "leaves nothing for a petit jury to ratify." *Id.* at 1180 (internal quotation marks omitted). We drew this idea in part from a Fourth Circuit decision holding that harmless error is inapplicable because the omission of an essential element deprives the court of jurisdiction: "The absence of prejudice to the defendant in a traditional sense does not cure a substantive, *jurisdictional* defect in an indictment." *United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir. 1988) (en banc) (emphasis added); *see also Du Bo*, 186 F.3d at 1180 (citing *Hooker*). We also appeared to hold that the jurisdictional basis for our rule of automatic reversal was supported by *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960). *See Du Bo*, 186 F.3d at 1179-80 (relying on those cases).[1]

Second, we said that omissions from a grand jury indictment, unlike omissions from jury instructions, simply are not susceptible to harmless error review. *Du Bo*, 186 F.3d at 1179-80.

Finally, we expressed a desire to give defendants an incentive to bring timely objections. We limited the automatic reversal rule to timely challenges, reasoning that under harmless error review, filing a pretrial motion would be "self-

---

[1]Other circuits also have interpreted *Russell* and *Stirone* to require automatic reversal. *See, e.g.*, *United States v. Spinner*, 180 F.3d 514, 516-17 (3d Cir. 1999); *Hooker*, 841 F.2d at 1230. Some of those circuits are rethinking the foundations of that position. *See, e.g.*, *United States v. Higgs*, 353 F.3d 281, 304-07 (4th Cir. 2003) (relying on later Supreme Court precedents), *cert. denied*, 125 S. Ct. 627 (2004); *United States v. Prentiss*, 256 F.3d 971, 981-85 (10th Cir. 2001) (en banc) (per curiam) (opinion by Baldock, J.) (rejecting applicability of cases, such as *Stirone*, that predated *Chapman v. California*, 386 U.S. 18, 23-24 (1967)); *see also* 4 Wayne R. LaFave et al., *Criminal Procedure* § 19.3 (2d ed. 1999 & Supp. 2005).

defeating" because the very filing of the motion would demonstrate that the defendant had notice of the missing element. *Id.* at 1180 n.3.

In this case, Defendant Timothy W. Omer raised a timely challenge to the omission of two elements from the indictment against him for bank fraud. We applied the rule of *Du Bo* and reversed Defendant's conviction because of one of those omissions.[2] At the time we decided *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005) (per curiam), however, none of the three rationales articulated in *Du Bo* supported continued application of the automatic reversal rule.

---

[2]Defendant was charged with bank fraud in violation of 18 U.S.C. § 1344(1). The indictment alleged that Defendant and an accomplice "knowingly executed or attempted to execute a scheme or artifice to defraud" four financial institutions by way of a check-kiting scheme. The indictment described that "scheme or artifice" in some detail but did not allege that the scheme was *material* to—i.e., "capable of influencing"—the bank's decision to release funds, as required by *Neder v. United States*, 527 U.S. 1, 16, 24-25 (1999). The indictment also failed to allege that the financial institutions were federally insured. *See United States v. Ali*, 266 F.3d 1242, 1243 (9th Cir. 2001) (" 'Proof of federally-insured status of the affected institution is, for both section 1344 and section 1014, a jurisdictional prerequisite as well as an element of the substantive crime.' " (quoting *United States v. Key*, 76 F.3d 350, 353 (11th Cir. 1996) (per curiam))). The district court denied Defendant's pretrial motion to dismiss the indictment for failure to allege those two elements.

After a trial, the jury convicted Defendant. The jury instructions did not mention "materiality," but they did require the jury to find beyond a reasonable doubt that the affected institutions were federally insured. The panel reversed Defendant's conviction because the indictment omitted the "materiality" element. *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005) (per curiam) ("[T]he indictment's failure to recite an essential element of the charged offense, namely the materiality of the scheme or artifice to defraud, is a fatal flaw requiring dismissal of the indictment.").

B.   *Supreme Court precedent does not support the jurisdictional rationale for* Du Bo.

After we issued *Du Bo*, the Supreme Court decided *United States v. Cotton*, 535 U.S. 625, 634 (2002). *Cotton* directly eliminated the jurisdictional premise for the automatic reversal rule. In *Cotton*, the Court held that an indictment containing the essential elements of the offense is *not* a jurisdictional prerequisite to a criminal prosecution. *See id.* at 630 (stating that "defects in an indictment do not deprive a court of its power to adjudicate a case").

The decisions of *Russell* and *Stirone*, which we cited in support of our jurisdictional rationale in *Du Bo*, are distinguishable from *Du Bo* and do not compel the automatic reversal rule. *Russell* and *Stirone* contain strong, general admonitions about protecting the Fifth Amendment right to have a grand jury determine probable cause. *See Russell*, 369 U.S. at 770 ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure."); *see also Du Bo*, 186 F.3d at 1179-80 (holding that, when "[w]e may only guess whether the grand jury" found probable cause to support the missing element, "[r]efusing to reverse . . . would impermissibly allow conviction on a charge never considered by the grand jury" (citing *Stirone*, 361 U.S. at 219)). But both *Russell* and *Stirone* were concerned with preventing the government from pursuing a theory of the crime not presented to the grand jury; the Court sought to prevent that kind of a substantive "constructive amendment" of the indictment.[3]

---

[3]In *Russell*, the defendants were convicted under 2 U.S.C. § 192 of willfully refusing to "answer any question pertinent to the question under inquiry" in a congressional hearing. 369 U.S. at 751 & n.2, 752. The Court reversed their convictions because their indictments did not identify the subject of the pertinent congressional hearings. The Court's chief concern

*See Cotton*, 535 U.S. at 631 (describing *Russell* and *Stirone* as reflecting the "settled proposition of law" that "an indictment may not be amended except by resubmission to the grand jury"). Many cases, however, including the present one, do not involve a new or different theory, so it is questionable whether the Supreme Court's stated rationale must apply across the board to every kind of missing element. *See, e.g.*, *United States v. Prentiss*, 256 F.3d 971, 984 n.11 (10th Cir. 2001) (en banc) (per curiam) (opinion by Baldock, J.) (distinguishing the constructive amendment at issue in *Stirone* from the mere failure to allege an essential element because, in the latter case, the indictment "sought to charge Defendant with the sole crime for which the jury convicted him").

Additionally, *Russell* and *Stirone* were decided before *Chapman v. California*, 386 U.S. 18. 22 (1967), in which the Court established that constitutional errors can be harmless. Even more importantly, *Russell* and *Stirone* were decided before *Neder v. United States*, 527 U.S. 1, 7-15 (1999), a case that is significant here both for its explanation of "structural error" (discussed below) and its substantive holding that omission of an element of the charged crime from jury instructions can be harmless. *See also United States v. Allen*,

---

was that one of the defendants had not received notice "of the nature of the accusation against him." *Id.* at 767. The Court also held that, even if a bill of particulars could provide the defendant with notice, it could not ensure that the grand jury had determined the question under inquiry. *Id.* at 770. To protect the right to grand jury indictment, the Court applied the "settled rule" that only the grand jury may amend the indictment and, accordingly, reversed the conviction. *Id.* at 770-71.

In *Stirone*, the defendant was indicted for unlawfully interfering with interstate commerce by obstructing the movement of sand across state lines. 361 U.S. at 213-14. At trial, however, the jury was permitted to convict the defendant for interfering either with the movement of sand *or* with the movement of steel. *Id.* at 214. The Court held that this alternate factual theory was more than a mere variance in proof; it presented the risk of conviction for an offense different from that which the grand jury had charged. Accordingly, the Court reversed the conviction. *Id.* at 217-18.

406 F.3d 940, 943-45 (8th Cir. 2005) (en banc) (reviewing for harmless error because *Neder*'s list of structural errors did not include *Stirone* and because *Neder* held that omissions from jury instructions can be harmless), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Sept. 29, 2005) (No. 05-6764). As our sister circuits have done, we can distinguish *Russell* and *Stirone*.

C.   *Our own precedents undermine* Du Bo*'s premise that omissions from the grand jury are not susceptible to harmless error review*.

In *Du Bo*, we asserted that omissions from the grand jury are, in general, not proper fodder for harmless error review. We reasoned that assessing grand jury error would require the court to " 'guess as to what was in the minds of the grand jury.' " *Du Bo*, 186 F.3d at 1179 (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979)). Our own precedents undermine this rationale.

When defective indictments are challenged for the first time on appeal, our cases do not mandate automatic reversal but, rather, require us to review for plain error. In so doing, we perform a prejudice analysis nearly identical to the analysis that we refused to perform in *Du Bo*. *See United States v. Velasco-Medina*, 305 F.3d 839, 847 (9th Cir. 2002) (holding that "any defect in the indictment was harmless"); *United States v. Leos-Maldonado*, 302 F.3d 1061, 1064 (9th Cir. 2002) ("Leos cannot meet the third condition [of the plain error standard]."). Except for the burden of proof, the third element of the plain error analysis is identical to the harmless error analysis: Both require us to determine whether the error "affect[ed] substantial rights," i.e., prejudiced the defendant. *United States v. Jordan*, 291 F.3d 1091, 1095-96 (9th Cir. 2002). *Compare Cotton*, 535 U.S. at 631 (setting forth the four prongs of plain error review: (1) an error; (2) that is plain; (3) that "*affect[s] substantial rights*"; and (4) that "seriously affect[s] the fairness, integrity, or public reputation of

judicial proceedings" (alteration in original) (emphasis added) (internal quotation marks omitted)), *with* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not *affect substantial rights* must be disregarded." (emphasis added)).

In *Velasco-Medina* and *Leos-Maldonado*, we held that omissions from indictments did not affect a defendant's "substantial rights" because the defendant had notice of the missing element, because the weight of the evidence in the trial record established that element, and because the petit jury found the element proved beyond a reasonable doubt. *Velasco-Medina*, 305 F.3d at 847; *Leos-Maldonado*, 302 F.3d at 1064-65. Those holdings make it impossible to conclude that omissions from indictments are exempt from Rule 52(a) because they "are so intrinsically harmful," *Neder*, 527 U.S. at 7, that they necessarily "affect substantial rights." *See also id.* (describing structural errors as those that " 'defy analysis by "harmless error" standards' " (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991))).

Even more significant than those plain error decisions is a case in which we applied harmless error principles to review an indictment that was challenged in district court after the trial began. *See United States v. James*, 980 F.2d 1314, 1319 (9th Cir. 1992) (concluding that "[t]he error in the indictment could have had no effect on the outcome of the trial and was *harmless beyond a reasonable doubt*" (emphasis added)); *cf. Du Bo*, 186 F.3d at 1180 n.3 (stating that its rule of automatic reversal applies only to timely—that is, pretrial—challenges).

As our cases demonstrate, it simply is not true, as we suggested in *Du Bo*, 186 F.3d at 1179-80, that it is impossible to review an omission for harmlessness. In the untimely challenge cases, we have acknowledged that it is possible to review the prejudice caused by the omission of an element from an indictment, and in fact we have conducted both harmless error and plain error review.

D.  *Encouraging timely objections to indictments is an insufficient justification for retaining* Du Bo*'s automatic reversal rule.*

As noted, we have applied harmless error principles to the omission of elements from grand jury indictments in cases where the defendant did not object before trial. If we accept the view that it is *possible* to review defective indictments for harmless error, the only remaining basis for *Du Bo*'s rule is our desire to give defendants an incentive to bring timely objections. *See Du Bo*, 186 F.3d at 1180 n.3 (giving a practical reason for applying a rule of automatic reversal to timely challenges to indictments).

There is nothing wrong with reviewing a timely argument under a more favorable standard of review than an untimely one; we do it all the time.[4] But the fact that a defendant brings a timely objection, standing alone, cannot be sufficient to create an exemption from the general rule that errors having no effect on the outcome of a proceeding must be disregarded. *See* Fed. R. Crim. P. 52(a). Structural errors exempt from Rule 52(a) are "basic protections without which . . . no criminal punishment may be regarded as fundamentally fair." *Neder*, 527 U.S. at 8-9 (internal quotation marks omitted).[5]

---

[4]Indeed, even if we eliminated the rule of automatic reversal, we would continue to review omissions challenged before trial more rigorously. Our established rule for challenges that come at later stages of the district court proceeding is to "liberally construe the indictment in favor of validity." *United States v. Chesney*, 10 F.3d 641, 643 (9th Cir. 1993).

[5]Even when we have held that an error is subject to a rule of automatic reversal without deeming it "structural," as in *United States v. Annigoni*, 96 F.3d 1132, 1144 (9th Cir. 1996) (en banc), we did so because the error was "simply not amenable to harmless-error analysis." In this connection, I also question our holding in *Annigoni*, that even a nonstructural error can be subject to a rule of automatic reversal. Three years after we issued that decision, *Neder* reiterated the Supreme Court's two-option approach and held that, "[f]or *all* other [nonstructural] errors, reviewing courts *must* apply" a harmless error analysis. 527 U.S. at 7 (emphasis added).

Neither the nature of the error, nor its amenability to harmless error review, is affected by the timing of a defendant's challenge. Therefore, the timeliness of a defendant's challenge cannot justify *Du Bo*'s rule of automatic reversal.

E.   *Not only are the premises articulated in support of* Du Bo*'s automatic reversal rule insufficient, but Supreme Court precedent suggests the opposite result.*

The Supreme Court held in *Neder* that the omission of an element from jury instructions is subject to harmless error review. The element omitted in *Neder* was materiality, exactly the same as one of the two elements omitted from Defendant's indictment in the present case. In *Neder*, the Court ruled that the omission of the materiality element from the jury instructions was harmless beyond a reasonable doubt because the trial record contained no evidence that could have led a rational jury to find that the defendant's false statements were immaterial. 527 U.S. at 16-20.

The situation in *Neder* presents a close parallel to the omission of an element from an indictment and leaves us with an incongruity: Omission of an element from an indictment is subject to automatic reversal, but omission of the same element from a jury instruction is not. Yet, the right to a grand jury finding of probable cause as to each element of the offense is no more important, no more central to the fundamental fairness of a prosecution, than the right to a petit jury's finding that each element was proved beyond a reasonable doubt. *Cf. Cotton*, 535 U.S. at 634 ("Respondents emphasize that the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power. No doubt that is true. But that is surely no less true of the Sixth Amendment right to a petit jury, which, unlike the grand jury, must find guilt beyond a reasonable doubt." (citation omitted)).

In deciding *Omer*, the panel distinguished *Neder* on the ground that, whereas an error in jury instructions can be

assessed with reference to the trial record and the overall fairness of the trial, assessing a grand jury error would require the court to " 'guess as to what was in the minds of the grand jury' " and, in any event, could not be remedied by a fair trial. *Du Bo*, 186 F.3d at 1179 (quoting *Keith*, 605 F.2d at 464). As demonstrated above, that reasoning—that there is no way to evaluate, or to cure, any prejudice caused by the omission of an element from an indictment—is undermined by a variety of cases from the Supreme Court, our court, and other circuits in which courts actually do evaluate the prejudice caused by defective grand jury indictments. The cases show that, as a matter of legal doctrine, it is possible (and, indeed, commonplace) to review the omission of an element from a grand jury's indictment for harmless error.

Under Supreme Court precedent, most errors in grand jury proceedings are reviewed for harmless error. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."); *United States v. Mechanik*, 475 U.S. 66, 70 (1986) (same).[6] In *Mechanik*, the Court held that, although the error "had the theoretical potential to affect the grand jury's determination whether to indict these particular defendants for the offenses with which they were charged," the defendants' later conviction by a petit jury rendered the error harmless. 475 U.S. at 70; *see id.* (stating that "the petit jury's subsequent guilty verdict means not only

---

[6]The only error in grand jury proceedings that the Supreme Court has considered structural, and thus subject to automatic reversal, is discrimination on account of race, and possibly sex, in the selection of grand jurors. *See Vasquez v. Hillery*, 474 U.S. 254, 260-63 (1986) (race discrimination); *Bank of Nova Scotia*, 487 U.S. at 257 (discussing its reversal because of sex discrimination in *Ballard v. United States*, 329 U.S. 187, 193 (1946)). In *Mechanik*, the Court interpreted the rule of *Vasquez* as a "prophylactic means of deterring grand jury discrimination in the future" and stated that such "considerations have little force outside the context of racial discrimination in the composition of the grand jury." 475 U.S. at 70 n.1.

that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt"). At the very least, *Mechanik* suggests that there is nothing about the nature of a grand jury proceeding that precludes harmless error review. In the light of *Mechanik*, if the defendant had actual notice of all elements, all were proved, and the jury was properly instructed, a missing element from a charge in the indictment can be harmless error.

The Supreme Court's cases enumerate a class of "structural errors" that are not susceptible to harmless error review. *See Neder*, 527 U.S. at 9 (listing such "structural errors"). The Court's decision in *Cotton* makes it extremely difficult to categorize omissions from indictments as structural errors. In *Cotton*, the Court held that one such omission "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the evidence of the missing element was "overwhelming and essentially uncontroverted" at trial. 535 U.S. at 632-33 (internal quotation marks omitted). In reaching that conclusion, the Court avoided deciding directly whether the omission of an element from an indictment can be reviewed for prejudice. *See Jordan*, 291 F.3d at 1096 n.7 (noting that *Cotton* "might have been significant" to our harmless error analysis had the Supreme Court rested its decision on the "substantial rights" prong of the "plain error review"). But *Cotton* remains relevant to rebut the idea that omission of an element from an indictment *always* renders a criminal proceeding unfair. *Cf. Neder*, 527 U.S. at 9 (deciding that omission of an element from jury instructions is not structural error, in part, because in *Johnson v. United States*, 520 U.S. 461, 468-69 (1997), the Court had decided that the same error did not satisfy the fourth element of the plain error analysis); *United States v. Robinson*, 367 F.3d 278, 285 (5th Cir.) ("We have interpreted *Cotton* also to require the application of harmless error review where an indictment is defective and the defendant preserves the error by proper objection."), *cert. denied*, 125 S. Ct. 623 (2004).

F. *Other circuits are increasingly abandoning* Du Bo-*like precedents in favor of harmless error review of grand jury omissions.*

Since 2001, six of our sister circuits have held explicitly that they will review defective indictments, challenged at various stages, for harmless error. *See Allen*, 406 F.3d at 945 (reviewing for harmless error an omission challenged at sentencing);[7] *Robinson*, 367 F.3d at 285 (reviewing for harmless error an omission challenged on appeal); *United States v. Higgs*, 353 F.3d 281, 304-07 (4th Cir. 2003) (reviewing for harmless error an omission challenged on appeal, relying on *Mechanik* and *Cotton*), *cert. denied*, 125 S. Ct. 627 (2004); *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002) (reviewing for harmless error an omission challenged after the jury was impaneled but before trial began); *Prentiss*, 256 F.3d at 981 (overruling the 10th Circuit's earlier *Du Bo*-like precedents and relying on *Neder* and *Mechanik* to provide harmless error review for an omission challenged on appeal); *United States v. Corporan-Cuevas*, 244 F.3d 199, 202 (1st Cir. 2001) (reviewing for harmless error an omission challenged on appeal); *see also* 4 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(a) (2d ed. 1999 Supp. 2005) ("[B]y a conservative count, at least five federal circuits have abandoned the traditional position mandating automatic reversal, and substituted harmless error review, for appellate review of a timely challenge to an indictment's failure to allege an essential element of the offense."). *But see United States v. Pickett*, 353 F.3d 62, 68 (D.C. Cir. 2004) (expressly declining to decide whether harmless error review is available).

---

[7]*Allen* was a death penalty case. The indictment was defective because it omitted any statutory aggravating factor. 406 F.3d at 943. The defendant "presciently" objected in the district court. *Id.* The court rejected the defendant's reliance on *Stirone*, pointing out that *Chapman*, *Fulminante*, and *Neder* had changed the landscape. Adopting essentially the analysis contained in this dissent, the court held that the defect in the indictment was subject to harmless error review. *Allen*, 406 F.3d at 945-46.

G.   Omer *cleanly presents an opportunity to reconsider the rule of automatic reversal*.

In this case, Defendant cited the omission of two elements from his indictment in support of his argument for automatic reversal. The first element, materiality, was omitted from Defendant's indictment for bank fraud as well as from the jury instructions at trial. By contrast, only the indictment omitted the second element, the federally insured status of the banks defrauded by Defendant. The jury was properly instructed about the second element at trial and found beyond a reasonable doubt that the financial institutions at issue were federally insured.

The panel's decision addressed only the first omission. Applying *Du Bo*, 186 F.3d at 1179, the panel held that "the indictment's failure to recite an essential element of the charged offense, namely the materiality of the scheme or artifice to defraud, is a fatal flaw requiring dismissal of the indictment." *Omer*, 395 F.3d at 1089. Although the panel reversed solely because of the indictment's failure to allege materiality, the indictment's failure to allege that the banks were federally insured likewise would have been subject to the rule of automatic reversal because Defendant's challenge was timely. *See James*, 980 F.2d at 1318 (stating that the failure of the indictment in *United States v. Coleman*, 656 F.2d 509, 511 (9th Cir. 1981), to allege that the bank was federally insured was cured by the indictment's reference to the statute setting forth that element, and thus did not require automatic reversal, *only* because the defendant's challenge was not timely).

The omission of two elements, one of which was properly instructed and one of which was not, provides a unique opportunity to decide whether those two different, commonly occurring situations require different answers with respect to the availability or application of a harmless error analysis. *See, e.g.*, *Jordan*, 291 F.3d at 1096 (holding that, when drug

quantity was neither alleged in the indictment nor proved to the jury beyond a reasonable doubt, the omission was not harmless beyond a reasonable doubt). In my view, the court en banc ought to abolish the rule of automatic reversal only in the most troubling subset of cases: convictions in which the defendant had notice of, and the jury was properly instructed regarding, the element of the crime missing from the indictment.[8]

## H.  *Conclusion*

I am confident that the indictment's failure to allege that the defrauded banks were federally insured did not prejudice Defendant. He does not dispute that he actually knew that federally insured status was an element of the crime. Moreover, certificates of federally insured status for each bank were provided to Defendant (albeit late), evidence of federal insurance was introduced at trial, the jury was instructed that it must find that the banks were federally insured and, by its verdict, the jury did so find beyond a reasonable doubt. This combination of factors plainly would satisfy the prejudice inquiry that we previously have used in untimely challenge cases and that other circuits have adopted. Nonetheless, *Du Bo* requires reversal for this defect alone.[9]

A result that makes as little common sense as that, on a recurring issue that has prompted a growing consensus in our sister circuits that harmless error review is appropriate, should result in en banc rehearing. Our practice of *automatically* reversing convictions when a defendant timely objects that an element of the offense was omitted from the indictment is out of step with *Neder*, *Cotton*, *Mechanik*, and our own cases

---

[8]My concern, in other words, is not the result in *Omer*, but the analysis that the panel was required to use to reach it.

[9]By contrast, the jury was not instructed on the missing materiality element. In my view, the omission of the element from *both* the indictment *and* the instructions was not harmless beyond a reasonable doubt.

reviewing the prejudice caused by the omission of elements from indictments. Accordingly, I respectfully dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.