**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MANUEL SALAZAR-LOPEZ,
          *Defendant-Appellant.*

No. 06-50438

D.C. No.
CR-05-01834-MLH

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
May 16, 2007—Pasadena, California

Filed October 24, 2007

Before: Raymond C. Fisher and Richard R. Clifton,
Circuit Judges, and Jeremy D. Fogel,* District Judge.

Opinion by Judge Clifton

---

*The Honorable Jeremy D. Fogel, United States District Judge for the
Northern District of California, sitting by designation.

14167

## COUNSEL

Carey D. Gorden (argued), Federal Defenders of San Diego, Inc., San Diego, California; for the appellant.

Karen P. Hewitt, United States Attorney; Bruce R. Castetter, Assistant United States Attorney; Christopher P. Tenorio (argued), Assistant United States Attorney, San Diego, California; for the appellee.

## OPINION

CLIFTON, Circuit Judge:

We decide two questions. First, for a defendant convicted of being a previously removed alien found in the United States, in violation of 8 U.S.C. § 1326, we must resolve whether the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under 8 U.S.C. § 1326(b). We answer that question in the affirmative. Second, we consider whether such an error, in a context that affects only sentencing, is subject to harmless error analysis. We answer that question in the affirmative, as well. Since we hold that the error here was harmless, we affirm the sentence imposed by the district court on this defendant.[1]

---

[1]In this opinion we address only Salazar-Lopez's sentencing contentions. We resolve his challenge to his conviction in an accompanying memorandum disposition.

## I.   Background

After being apprehended by the Border Patrol about two miles north of the U.S.-Mexico border on September 13, 2005, Manuel Salazar-Lopez was charged with one count of being a previously removed alien "found in" the United States in violation of 8 U.S.C. § 1326. The indictment did not allege that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-Lopez's prior removal.

At trial, the Government introduced four pieces of evidence to prove that Salazar-Lopez had been removed prior to this arrest: (1) an order of an immigration judge from 2002, ordering that Salazar-Lopez be removed from the United States; (2) a warrant of removal from 2002, bearing Salazar-Lopez's photograph, signature, and fingerprint; (3) a notice of reinstatement of the 2002 order; and (4) a warrant of removal dated December 8, 2004, also bearing Salazar-Lopez's picture, fingerprint, and signature. In addition, the signature of Immigration and Customs Enforcement Agent Lucas Leal was also on the 2004 warrant, which, according to Leal's testimony, indicated that Leal had witnessed Salazar-Lopez's departure back to Mexico on May 31, 2005.

After Salazar-Lopez was convicted, the probation officer filed a pre-sentence report recommending that Salazar-Lopez be sentenced under 8 U.S.C. § 1326(b)(1), because the 2005 removal was subsequent to a 2003 felony conviction. Salazar-Lopez objected, arguing that only the two-year maximum under § 1326(a), and not the ten-year maximum provided for in § 1326(b)(1),[2] was applicable to his case, because the facts

---

[2]This difference in statutory maximum sentences also results in a difference as to the maximum term of supervised release that can be imposed. Because § 1326(a) has a maximum sentence of two years, only one year of supervised release can follow the prison term, while the higher statutory maximum of § 1326(b)(1) means that the imposition of up to three years of supervised release is permitted. *See* 8 U.S.C. § 1326(a),(b); 18 U.S.C. §§ 3583(b), 3559(a).

necessary to sustain § 1326(b)(1)'s sentencing enhancement had not been charged in the indictment and proved beyond a reasonable doubt to a jury. The district court rejected Salazar-Lopez's argument and largely adopted the pre-sentence report's sentencing calculations, with the exception that the court decreased Salazar-Lopez's offense level by two for acceptance of responsibility. Salazar-Lopez was sentenced to 21 months of imprisonment and three years of supervised release.

## II.   Analysis

Because Salazar-Lopez made a timely challenge to his sentence below, he has properly preserved his claim of error. "Preserved *Apprendi* challenges are reviewed de novo." *United States v. Hollis*, 490 F.3d 1149, 1154 (9th Cir. 2007) (citing *United States v. Smith*, 282 F.3d 758, 771 (9th Cir. 2002)).

### A.   The Sixth Amendment Violation

An alien found in the United States after having been previously been removed violates 8 U.S.C. § 1326. The maximum statutory penalty under § 1326 is two years of imprisonment and one year of supervised release, unless the previous removal was subsequent to certain types of convictions. *See* 8 U.S.C. § 1326(a),(b); 18 U.S.C. §§ 3583(b), 3559(a). In this case, the district court found that Salazar-Lopez had been removed after such a felony conviction, and so it determined that the applicable statutory maximum was ten years of imprisonment and three years of supervised release. 8 U.S.C. § 1326(b)(1), 18 U.S.C. §§ 3583(b), 3559(a). On appeal, Salazar-Lopez renews his contention that his exposure to § 1326(b)'s higher statutory maximum violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because neither the date of his prior removal nor the temporal relationship between the removal and his prior conviction was alleged in the indict-

ment and proved to a jury.[3] We agree that an *Apprendi* error occurred here.

**[1]** In *United States v. Covian-Sandoval*, 462 F.3d 1090, 1096-98 (9th Cir. 2006), we recognized that the fact of a prior conviction need not have been submitted to the jury under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), but nevertheless held that an *Apprendi* error had occurred where the date of a prior removal (necessary to determine whether the removal had *followed* the conviction in time) was not admitted by the defendant or found by a jury. A similar error is present here, since the jury was presented with evidence of two removals, one which preceded Salazar-Lopez's felony conviction and one which followed, and was never asked to find that the later removal had indeed occurred. *Cf. United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1093-94 (9th Cir. 2007) (finding no error even though the jury did not find an exact date of removal, because both removals put before the jury were subsequent to the defendant's felony conviction).[4]

---

[3]Salazar-Lopez's other sentencing contentions, that we ought to limit *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), to its facts under the doctrine of constitutional doubt, that *Almendarez-Torres* has been overruled, and that § 1326(b) is unconstitutional, are foreclosed by Ninth Circuit precedent. *United States v. Covian-Sandoval*, 462 F.3d 1090, 1096-97 (9th Cir. 2006) (citing *United States v. Beng-Salazar*, 452 F.3d 1088 (9th Cir. 2006); *United States v. Diaz-Argueta*, 447 F.3d 1167, 1170 (9th Cir. 2006); *United States v. Rodriguez-Lara*, 421 F.3d 932, 949-50 (9th Cir. 2005)).

[4]The Government argues that we should not follow *Covian-Sandoval* because it conflicts with other Circuit precedent. We see no conflict with the first case the Government cites, *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir. 2001). *Castillo-Rivera* addressed only the continuing viability of the *Almendarez-Torres* exception for prior convictions, not whether the date of removal (as opposed to the date of the conviction) had to be found by a jury. *See id.* The second case cited by the Government, *United States v. Lopez*, 469 F.3d 1241 (9th Cir. 2006), did initially contain some potentially confusing language on this issue, but that opinion was amended, 2007 WL 2429368 (9th Cir. Aug. 29, 2007), in a way that clarified the vitality of *Covian-Sandoval* and its application to that case, *id.* at *6.

Salazar-Lopez's case differs slightly from *Covian-Sandoval*, however, because the error to which he points on appeal is not only that the jury never made the required finding but also that the Government never alleged in the indictment that he had been removed on a specific, post-conviction date.

**[2]** Such an allegation was required. *See United States v. Cotton*, 535 U.S. 625, 627, 632 (2002). As we noted in *United States v. Jordan*, 291 F.3d 1091, 1095 (9th Cir. 2002), our decision in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002) (en banc), "answered for our circuit the question left open by the Supreme Court in *Apprendi*, by holding that any fact other than a prior conviction that increases the maximum penalty for a federal crime must also be charged in an indictment." Here, the temporal relationship between Salazar-Lopez's removal and his previous conviction was a fact that increased the maximum sentence that he faced. As such, the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury. The failure to do so was an *Apprendi* error.

### B.   Harmless Error

Having found such an error, we are faced with the question of whether this error is amenable to harmless error review or is instead a "structural error" automatically entitling Salazar-Lopez to a resentencing. Salazar-Lopez contends that it is a structural error, while the Government asserts that harmless error analysis is appropriate and, furthermore, that the error here was indeed harmless.

The Supreme Court has not squarely resolved this question. Although it identified the question in *Cotton*, the fact that the Court was reviewing for plain error in that case meant that it did not have to decide whether this type of flaw in the indictment is a structural error. *Id.* at 632-33. Instead, the Court skipped to the plain error test's fourth prong and held that

failing to allege a fact relevant to the statutory maximum and submit it to the jury did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the evidence on the particular factual issue in *Cotton*, drug quantity, was "overwhelming and essentially uncontroverted." *Id.* at 632-33 (internal quotation marks omitted).

The Court's more recent decision in *Washington v. Recuenco*, 126 S. Ct. 2546 (2006), is also illustrative, although not completely dispositive. In *Recuenco*, the Court held that harmless error analysis did apply to errors arising under *Blakely v. Washington*, 542 U.S. 296 (2004), reversing the Supreme Court of Washington's decision to the contrary. *Recuenco* does not squarely foreclose Salazar-Lopez's argument, though, because the Court there was focused on the error of "fail[ing] to submit a sentencing factor to the jury," and did not consider *Recuenco* as "a case of charging error." *Id.* at 2252 n.3; 2553; *see also id.* at 2554 (Stevens, J., dissenting) (characterizing majority opinion as avoiding the issue of sufficient notice through the indictment). Although *Cotton* and *Recuenco* strongly suggest that harmless error analysis ought to apply here, they do not, by themselves, dispose of Salazar-Lopez's contention.

Salazar-Lopez argues that our decision in *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999), requires that we treat the current indictment error as a structural error demanding an automatic resentencing. We held in *Du Bo* "that, if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Id.* at 1179. The reach of *Du Bo* has been limited somewhat, as we have distinguished it from situations where the challenge to the indictment was untimely, because no objection was made at trial. *United States v. Velasco-Medina*, 305 F.3d 839, 846-47 (9th Cir. 2002) (applying plain error review to an indictment's failure to allege an element of the crime, and refusing relief

because the defendant suffered no prejudice from the omission). We have, however, continued to apply the central holding of *Du Bo* to dismiss indictments in the face of timely challenges. *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 1118 (2007).

**[3]** We have a precedent more analogous to the current case than *Du Bo*, however, and that is *Jordan*, 291 F.3d at 1094-97. There, we held first that because "[d]rug quantity was neither charged in the indictment, nor submitted to the jury and proved beyond a reasonable doubt," the district court had erred in using the statutory maximum applicable to 50 or more grams of methamphetamine rather than that applicable to an indeterminate quantity. *Id.* at 1095. Because the defendant in *Jordan* had, as Salazar-Lopez has here, objected to the pre-sentence report on the basis of this error, the *Jordan* court considered the error preserved. *Id.* at 1094, 1095. As a result, we reviewed the sentence not "for plain error, but instead for harmless error." *Id.* at 1095. We stated in *Jordan* that a defendant's "sentence 'cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt.' " *Id.* (quoting *United States v. Garcia-Guizar*, 234 F.3d 483, 488 (9th Cir. 2000)); *see also Hollis*, 490 F.3d at 1154-57 (finding an *Apprendi* error where the indictment failed to allege, and the jury did not find, drug type with adequate specificity, but holding that this error was harmless). The question here is whether Salazar-Lopez's case is controlled by *Jordan* or *Du Bo*.

**[4]** We conclude that *Jordan* controls, and thus that harmless error analysis does apply. First and foremost, the procedural history of this case, the nature of Salazar-Lopez's challenge, and the nature of the relief he requests mirror *Jordan* much more closely than *Du Bo*. Like *Jordan*, Salazar-Lopez raised his *Apprendi* claim post-trial in his objections to the pre-sentence report, *see Jordan*, 291 F.3d at 1094-95, whereas in *Du Bo* the defendant objected to the indictment "[m]ore than two months before trial," *see Du Bo*, 186 F.3d

at 1179. Salazar-Lopez has consistently sought sentencing relief for this flaw in the indictment, as in *Jordan*, 291 F.3d at 1094, while the relief sought by *Du Bo* was to reverse the judgment as a whole and dismiss the flawed indictment, *Du Bo*, 186 F.3d at 1181. Ultimately, the real substance of Salazar-Lopez's claimed error is more akin to a "[f]ailure to submit a sentencing factor to the jury," as opposed to "charging error," *see Recuenco*, 126 S. Ct. at 2552 n.3, 2553; *cf. United States v. Zepeda-Martinez*, 470 F.3d 909 (9th Cir. 2006) (holding that a properly preserved *Apprendi* error, of failing to submit the temporal relationship between a removal and a prior conviction in a § 1326 prosecution, should be reviewed for harmless error).

In addition, the logical underpinnings of *Du Bo* do not counsel for an extension of *Du Bo* to the sentencing context. The conclusion in *Du Bo* was compelled largely by two rationales: (1) that the question of whether a grand jury might have indicted on an additional element was not amenable to harmless error review; and (2) that subjecting timely objections to harmless error analysis would destroy any incentive on the part of a defendant to object, since objecting would indicate an awareness of the missing element and hence the harmlessness of the omission.[5] *Du Bo*, 186 F.3d at 1179-80, 1180 n.3.

As for the first rationale, *Jordan* recognized the difficulty of anticipating what a grand jury would have done if faced with a close factual allegation, and indeed that consideration was part of the reason that the *Jordan* court ultimately concluded that it could not hold the *Apprendi* error there, as to drug quantity, harmless.[6] *See Jordan*, 291 F.3d at 1096. As

---

[5]To the extent *Du Bo* was premised on indictment errors being jurisdictional, *see Du Bo*, 186 F.3d at 1180; *see also United States v. Omer*, 429 F.3d 835, 836 (9th Cir. 2005) (Graber, J., dissenting from denial of rehearing en banc), that rationale has been overruled by the Supreme Court in *Cotton*, 535 U.S. at 629-31; *see also Omer*, 429 F.3d at 837 (Graber, J., dissenting from denial of rehearing en banc).

[6]As we noted in *Jordan*, when the indictment fails to make the requisite allegation:

*Jordan* illustrated, there may be cases where the failure to include a relevant fact in the indictment makes any conclusion as to harmlessness too speculative, but the existence of that potential difficulty need not preclude the use of harmless error analysis in every case. *Cf. Cotton*, 535 U.S. at 632-33 (refusing to find that a failure to allege drug quantity "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings" where the evidence "was 'overwhelming' and 'essentially uncontroverted,' " so that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base") (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)). Additionally, while the grand jury's restraining function—which *Du Bo* emphasized, 186 F.3d at 1179—is no doubt important, the Supreme Court has since recognized that the "check on prosecutorial power" provided by "the Fifth Amendment grand jury right" is "surely no less true of the Sixth Amendment right to a petit jury, which, unlike the grand jury, must find guilt beyond a reasonable doubt," *Cotton*, 535 U.S. at 634. Yet the failure to submit ele-

---

[W]e would first have to determine whether the grand jury would have indicted the defendant for over 50 grams . . . . Then, because Jordan had no notice from the indictment that quantity would be an issue at trial, we would need to determine whether Jordan might have contested quantity and what evidence [he] might have presented. Finally, to affirm the sentence, we would need to be able to say beyond any reasonable doubt that a jury, considering the actual evidence at trial and perhaps other evidence that was never presented, would have convicted [him] of the higher-quantity offense.

Here, we cannot reasonably conclude that these issues can be answered fairly based on reason and the record presented. When quantity is neither alleged in the indictment nor proved to a jury beyond a reasonable doubt, there are too many unknowns to be able to say with any confidence, let alone beyond reasonable doubt, that the error was harmless.

291 F.3d at 1096.

ments to the petit jury is reviewed for harmlessness. *Neder v. United States*, 527 U.S. 1, 8-15 (1999). Given that the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error," *Recuenco*, 126 S. Ct. at 2553, we feel comfortable that Salazar-Lopez's asserted error can be adequately handled under the harmless error framework employed by *Jordan*, so that no extension of *Du Bo* to the sentencing context is needed.

*Du Bo*'s second rationale, the encouragement of timely objections to indictment deficiencies, is also inapplicable here. In this case, Salazar-Lopez's objections to the indictment were timely for sentencing purposes (and hence preserved the sentencing claim for our review), but were made only after the conclusion of his trial. To allow an omission in the indictment, raised only after the completion of the trial, to result in an automatic cap on the defendant's sentence would encourage defendants to remain silent at the time when an indictment could reasonably be amended to present the necessary allegations—the exact opposite of the result *Du Bo* hoped to achieve.

In light of the Supreme Court's discussions in *Cotton* and *Recuenco*, and the striking similarity of this case to *Jordan*, we view *Du Bo* to be distinguishable. *Du Bo* addressed only timely challenges to the sufficiency of the indictment, not the instant *Apprendi* sentencing error that Salazar-Lopez raises. We hold that *Jordan* controls Salazar-Lopez's case, and thus we must inquire as to whether the failure to allege and prove to the jury the temporal relationship between Salazar-Lopez's prior conviction and his removal was harmless error.

**[5]** On this record, we hold that the error in the indictment was indeed harmless. The evidence supporting Salazar-Lopez's later removal is "overwhelming and uncontroverted," *Zepeda-Martinez*, 470 F.3d at 913. At trial, the government introduced a warrant of removal showing that Salazar-Lopez

was ordered removed on December 8, 2004, and was physically removed to Mexico on May 31, 2005. The warrant bore Salazar-Lopez's name, immigration identification number, photograph, signature, and fingerprint. We noted in *Zepeda-Martinez* that "[t]his warrant is sufficient alone to support a finding of removal beyond a reasonable doubt." *Id.* (citing *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005)). Here, there is even more evidence of Salazar-Lopez's later removal, as the Government produced at trial the immigration officer who executed this warrant. That officer identified his signature on the warrant, and testified that this signature indicated that he had witnessed Salazar-Lopez leave the United States on May 31, 2005. At trial, Salazar-Lopez did not produce any evidence or argument, beyond general suggestions of possible clerical errors relating to the storage and upkeep of his file, to cast doubt on the authenticity of this evidence.[7]

[6] Although we do not consider new admissions made at sentencing in our harmless error inquiry, *Jordan*, 291 F.3d at 1097, we do consider sentencing proceedings insofar as they would help us adduce what other evidence might have been produced at trial, had the question been properly put before the jury, *Zepeda-Martinez*, 470 F.3d at 913 & n.3. Here, because the pre-sentence report recommended that Salazar-Lopez's offense level be increased by four for a previous deportation subsequent to a felony conviction, pursuant to U.S. Sentencing Guidelines § 2L1.2(b)(1)(D), the issue of the temporal relationship between his last removal and his prior conviction was squarely raised at Salazar-Lopez's sentencing. Salazar-Lopez, however, made no factual attack on the applicability of this increase. While there may be some cases and

---

[7]We do not suggest that evidence of such errors, attacking the accuracy or veracity of documents such as the warrant of removal, could never give rise to reasonable doubt concerning whether a removal had occurred. We hold only that Salazar-Lopez's showing on this point, in his particular case, was so weak as to not disturb our conclusion of harmlessness.

issues, such as the drug quantity question in *Jordan*, 291 F.3d at 1096-97, where the record will be too indeterminate for us to conclude what result would have obtained had the question been properly placed before the grand and petit juries, this particular question concerning the date of one of Salazar-Lopez's removals is not one of them. In light of the record here, "we are satisfied beyond a reasonable doubt that . . . the result 'would have been the same absent the error.' " *Zepeda-Martinez*, 470 F.3d at 913-14 (quoting *Neder*, 527 U.S. at 19).

## III.   Conclusion

Although the temporal relationship between Salazar-Lopez's removal and his prior conviction should have been alleged in the indictment and proved to the jury, we nevertheless affirm the sentence imposed because we find that this error was harmless in his case.

**AFFIRMED**.